ORAL ARGUMENT NOT YET SET

No. 23-5069

UNITED STATES COURT OF APPEALS
DISTRICT OF COLUMBIA CIRCUIT

———————————

**FLETA SABRA**

*Plaintiff-Appellant,*

**v.**

**U.S. CUSTOMS AND BORDER
PROTECTION,**

*Defendant-Appellee.*

———————————

On Appeal for the United States District Court
for the District of Columbia, No. 1:20-cv-681 (CKK)
Before the Honorable Colleen Kollar-Kotelly

OPENING BRIEF OF PLAINTIFF-APPELLANT
FLETA SABRA

———————————

Andrew Fels, Esq.
Al Otro Lado
3214 Fountain Park Blvd.
Knoxville, TN 37917
865-567-4881
andrew@alotrolado.org

*Counsel for Plaintiff-Appellant*

December 11, 2023

## CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(A)(1), Plaintiff-Appellant Fleta Christina Cousin Sabra

certifies as follows:

*A. Parties and Amici.* The Plaintiff-Appellant for this case is Fleta Christina

Cousin Sabra, a United States citizen and resident of North Carolina. The

defendant appellee is United States Custom and Border Protection, a component of

the Department of Homeland Security. There are no amici in this case.

*B. Rulings Under Review.* The ruling under review is the order of the U.S.

District Court for the District of Columbia, docketed January 31, 2023, granting

defendant-appellee's renewed motion for summary judgment, and the

memorandum opinion supporting that order.

*C. Related Cases.* Plaintiff filed this case in the U.S. District Court for the

District of Columbia on March 9, 2020. The ruling under review has not previously

been before this Court or any other court. There are no related cases pending in this

Court or any other court of which counsel are aware.

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to D.C. Circuit Rule 26.1, counsel for the Appellant states that Al Otro

Lado, LLC, a non-profit legal services corporation, is a professional limited

liability company organized under the laws of California. Al Otro Lado has no

parent corporation. Al Otro Lado has never issued shares or debt securities to the

public, and no publicly-held company has any ownership interest in Al Otro Lado.

# TABLE OF CONTENTS

## Contents

CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES......................2

CORPORATE DISCLOSURE STATEMENT ......................................3

TABLE OF CONTENTS ......................................................4

TABLE OF AUTHORITIES......................................................6

GLOSSARY OF ABBREVIATIONS ..............................................8

INTRODUCTION ............................................................8

JURISDICTIONAL STATEMENT ...............................................9

STATEMENT OF ISSUES ......................................................9

STATUTES AND REGULATIONS ..............................................11

STATEMENT OF THE CASE....................................................11

STANDARD OF REVIEW .....................................................17

SUMMARY OF ARGUMENT...................................................17

I.   The District Court erred in deeming CBP's search adequate where it failed to search the email of the deputy CBP commander or follow up on similar obvious leads. ..................................................................20

   A.  CBP overlooked positive indicia of responsive records when it failed to conduct an iterative search of Deputy Commissioner McAleenan's email, an obvious lead for other responsive records, as indicated by CBP's investigation policy..............................................................20

   B.  An adequate search required searching other locations where records were likely to be found. ....................................................23

II.  The District Court erred in deciding that Appellee conducted an adequate keyword search despite its omission of key words and phrases..........................26

III. The District Court erred by failing to grant Appellant judgement as a matter of law based on Appellee's three-year failure to timely take required FOIA actions. ..................................................................28

   A.  The District Court erred in deciding that Appellee's partial response barred Appellant's motion for judgment on the pleadings. ..........................31

B.  Carefully articulating FOIA justiciability will facilitate swifter resolution of FOIA cases and reduce the number of future FOIA appeals. ............................32

CONCLUSION ..........................................................................................................33

CERTIFICATE OF COMPLIANCE ........................................................................34

ADDENDUM TO THE OPENING BRIEF OF PLAINTIFF-APPELLANT FLETA SABRA ....................................................................................................................35

5 U.S.C. § 552 .........................................................................................................36

5 U.S.C. § 552 .........................................................................................................37

PROOF OF SERVICE .............................................................................................43

# TABLE OF AUTHORITIES

## Cases

*Sabra v. CBP*, Civil Action No. 20-681 (CKK), 2023 U.S. Dist. LEXIS 15577 (D.D.C. Jan. 31, 2023) ..........................................................................................15

*Ackerly v. Ley*, 420 F.2d 1336, 1340 (1969) ...........................................................31

*Am. Historical Ass'n v. Nat'l Archives & Records Admin.*, 310 F. Supp. 2d 216 (D.D.C. 2004) .........................................................................................................31

*Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) .................................................................................................... 18, 26

*Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003).29

*Atkins v. Dep't of Justice*, No. 90-5095, 1991 U.S. App. LEXIS 22309, 1991 WL 185084, at *1 (D.C. Cir. Sept. 18, 1991) .........................................................30

*Blank Rome LLP v. Dep't of the Air Force*, No. 15-cv-1200-RCL, 2016 U.S. Dist. LEXIS 128209, at *17 (D.D.C. Sep. 20, 2016) ..................................................25

*Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, ("CREW") 711 F.3d 180, 188 (D.C. Cir. 2013)....................................................................29

*Founding Church of Scientology, Inc. v. National Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979) ........................................................................................ 17, 23

*In re Clinton*, 973 F.3d 106, 116 (D.C. Cir. 2020)..................................................18

*Judicial Watch, Inc. v. DOD*, 913 F.3d 1106, 1110 (D.C. Cir. 2019).......................17

*Judicial Watch. Inc. v. U.S. Naval Observatory*, 160 F. Supp. 2d 111 (D.D.C. 2001) ........................................................................................................ 30, 31

*Maynard v. C.I.A.*, 986 F.2d 547, 559-60 (1st Cir. 1993) .......................................27

*Montgomery v. Internal Revenue Serv.*, 40 F.4th 702, 714 (D.C. Cir. 2022)...........19

*Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) ............................................17

*Muttit v. Dep't of State*, 926 F. Supp. 2d 284, 296 (D.D.C. 2013).............. 13, 30, 31

*Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ........ 14, 19, 29

*Public Citizen Health Research Group v. FDA*, 185 F.3d 898, 906 (D.C. Cir. 1999) ..........................................................................................................................20

*Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402, 433 (D.C. Cir. 2017) .................................................................................................................. 19, 20

*Rodriguez v. DOD,* 236 F. Supp. 3d 26, 40 (D.D.C. 2017)....................................26

*Sabra v.* CBP, No. 23-5069, 2023 U.S. App. LEXIS 28955 (D.C. Cir. Oct. 31, 2023). ....................................................................................................................16

*Shapiro v. U.S. Dep't of Just.*, 40 F.4th 609, 612-13 (D.C. Cir.), *cert. denied*, 143 S. Ct. 526, 214 L. Ed. 2d 301 (2022) .......................................................... 19, 20, 23

*Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) ............................................................................................. 14, 18, 23

*Watkins L. & Advoc., PLLC v. U.S. Dep't of Just.*, 78 F.4th 436, 442 (D.C. Cir. 2023) .................................................................... 18, 19, 26, 27

*Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ...............18

**Statutes**

28 U.S.C. § 1291 .......................................................................................8
28 U.S.C. § 1331 .......................................................................................8
5 U.S.C. § 552 (a)(4)(B) .........................................................................17
5 U.S.C. § 552(a)(3)(A). ....................................................................11, 27
5 U.S.C. § 552(a)(4)(B) ............................................................................8
5 U.S.C. § 552(a)(6)(A) ..........................................................................11
5 U.S.C. § 552(a)(6)(A)(i)(I). .................................................................27
5 U.S.C. § 552(a)(6)(C)(i) .......................................................................28
52 U.S.C. § 30109(a)(9) ...........................................................................8

**Other Authorities**

CBP Directive No. 2130-021 .................................................... 20, 21, 23

**Regulations**

6 CFR 5.4(c)............................................................................................24

## GLOSSARY OF ABBREVIATIONS

**CBP**        Customs and Border Protection

**CRCL**       Civil Rights and Civil Liberties

**DCR**        Office of Diversity and Civil Rights

**DHS**        Department of Homeland Security

**FOIA**       Freedom of Information Act

## INTRODUCTION

This is a straightforward error correction case, requiring little more than boilerplate FOIA precedent to resolve. In 2015, Appellant was detained and assaulted by Appellee employees while helping a family of asylum-seekers cross the U.S. border. In 2017, Appellant submitted a FOIA request for substantially all CBP records related to her detention and assault. In 2020, Appellee search for responsive records. Despite having an extensive bureaucratic architecture overseeing civil rights investigations, Appellee searched only a limited number of CBP offices, made no referrals to other components, and search the emails of only the five CBP employees who witnessed Appellant's detention and assault. The search conducted of these five CBP employees used only a restricted range of keywords. Appellee's cramped, narrow search of limited offices and emails falls far short of the adequate search, calculated to find responsive records, required by FOIA. Thus, it was error for the District Court to grant Appellee's motion for summary judgment, particularly where Appellant produced an additional email,

one not uncovered by Appellee's email search, indicating a broader investigation. Because Appellee never conducted an adequate search, it was also error for the District Court to deny Appellant's motion for judgment on the pleadings.

## JURISDICTIONAL STATEMENT

The U.S. District Court for the District of Columbia had jurisdiction over the parties in this case under 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). It entered a final appealable order on January 31, 2023. Appellant filed a timely notice of appeal.

This Court has jurisdiction over this timely appeal from the District Court's final judgment under 28 U.S.C. § 1291 and 52 U.S.C. § 30109(a)(9).

## STATEMENT OF ISSUES

1.     The Freedom of Information Act ("FOIA") requires an agency to prove "beyond material doubt" that it conducted an adequate search reasonably calculated to find responsive records. Appellee only searched the emails of five CBP officers. Appellant independently discovered a responsive email from a civil rights officer to the deputy CBP commander discussing investigations into Appellee's assault by CBP officers. Appellee did not search the emails of the deputy CBP commander or follow similarly obvious leads. In granting Appellee summary judgment, did the District Court err in deciding that CBP conducted an

adequate search despite its failing to search the email of the deputy CBP

commander or follow up on similar obvious leads?

2.     An adequate electronic keyword FOIA search requires using keywords

reasonably calculated to find responsive records. Appellee's keyword search of

CBP employee emails included superfluous terms like "Syrian" and "Syria" did not

include essential terms such as: (1) Appellant's correct name; (2) the case number

for CBP's investigation of the assault on Appellant; (3) the case number for the

Office of the Inspector General's investigation of the assault on Appellant. In

granting Appellee summary judgment, did the District Court err in deciding that

CBP conducted an adequate keyword search despite omitting essential keywords?

3.     FOIA requires an agency's expedited processing decision within ten days, its

full response to a FOIA record request in thirty days, and that it then make the

records "promptly available" to the requester. Appellant filed her FOIA record and

expedited processing requests in 2017. Only after the filing of the instant case in

2020 did Appellee respond to Appellant's requests or begin producing records. Did

the District Court err by failing to grant Appellant judgement as a matter of law

based on Appellee's three-year failure to timely take these required FOIA actions?

## STATUTES AND REGULATIONS

The relevant statutory provisions are printed in the Addendum to this Brief. A

deferred appendix is forthcoming.

## STATEMENT OF THE CASE

Appellant, a devout Muslim and a U.S. citizen, is an accredited humanitarian

worker focused on providing aid to asylum seekers. ECF 1, ¶¶ 2,3.

On September 11, 2015, Appellant crossed the border from Mexico into the

United States with a group of Syrian asylum seekers. *Id.*, ¶2. During the group's

encounter with Appellee-Defendant CBP, Appellant and her companions were

detained and handcuffed. Appellant alleges that during this hours-long detention

she was subjected to ethnic slurs, assaulted by CBP employees, and sustained

physical injuries, injuries verified by physicians. *Id.*, ¶¶ 1-66.

Appellant filed civil rights complaints with Appellee. A few months later,

CBP investigators came to her home in North Carolina to interview her regarding

the detention and assault. *Id.*, ¶70.

On May 5, 2017, Plaintiff submitted to Appellee a FOIA request seeking:

> All agency records, including, but not limited to, video,
> database entries, photographs, communications
> (including emails, letters, faxes, phone logs, and text
> messages), memoranda, investigative reports, and other
> things relating to the encounter between [Plaintiff] and
> U.S. Customs and Border Protection officials on or about
> September 11, 2015 [or] September 12, 2015 at the Otay
> Mesa OR San Isidro ports-of-entry. Please search
> specifically for use of force reports, internal affairs

> complaints and responses, internal investigations, professional responsibility investigations and interviews, video and photographic evidence gathered in response to [Plaintiff's] complaints, and all other records in the possession, custody, or control of CBP… [Plaintiff] filed a complaint with [the Department of Homeland Security's Office for Civil Rights and Civil Liberties] on September 23, 2015, and was interviewed by officials she believes worked for CBP regarding that complaint on or about December 21, 2015 in North Carolina.

*Id.*, ¶¶ 74, 75.

Appellee answered on April 16, 2020, ECF 5, and Appellant filed a motion for judgement on the pleadings on May 21, 2020. ECF 7. In her motion, Plaintiff argued that she was entitled to a judgment as a matter of law that CBP violated FOIA by failing to rule on her expedited processing request in three years instead of the ten days allowed by the statute. Appellant also argued that she was entitled to judgment as a matter of law for CBP's failure to make her records promptly available, as required under 5 U.S.C. § 552(a)(3)(A).

The District Court did not immediately rule on Appellant's motion. Appelee belatedly began searching for and producing records, now almost three years after the request's initial filing.

On March 2, 2021, the District Court denied Appellant's motion for judgment on the pleadings. Memorandum Opinion, ECF 23. In relevant part, the District Court reasoned that an order requiring an agency to make records promptly available is only proper before an agency has made a response and begun producing records. *Id.* at 8-9. "Once an agency has made its final determination

under 5 U.S.C. § 552(a)(6)(A), the timeliness of that determination is no longer a live controversy fit for judicial review." *Id.* (quoting *Muttit v. Dep't of State*, 926 F. Supp. 2d 284, 296 (D.D.C. 2013)).

In March of 2021, Appellee filed its initial motion for summary judgment, claiming to have conducted an adequate search. As recounted by the accompanying first Declaration of Patrick Howard, in response to Plaintiff's FOIA request, "CBP conducted an extensive search for responsive records from March 24 – April 28, 2020, and again in October, 2020." Declaration of Patrick Howard, ECF 24-3[1] at p. 3. First, CBP searched certain CBP subcomponents: "the Office of Professional Responsibility, Office of Field Operations, U.S. Border Patrol, Office of Information Technology, and Office of Chief Counsel conducted searches for responsive records." *Id.* Next, "CBP's Office of Information Technology (OIT) conducted a search of the e-mail accounts of five CBP employees identified as potential witnesses to the encounter between Plaintiff and CBP." *Id.* The email search covered the dates between September 11, 2015 and March 10, 2016. However, the search only looked for a limited number of keywords: "1. Sabra 2. Cousinsabra 3. Cousin-Sabra 4. Syria 5. Syrian 6. Syrians." *Id.* at 4.

In a March 14, 2022 memorandum opinion, the District Court denied the Appellee's motion for summary judgment on the grounds that its supporting

---

[1] ECF 24-3 contains all three of Appellee's exhibits in support of its initial motion for summary judgment, including the first Patrick Howard declaration and his supplemental declaration.

declarations "indicate that particular offices within CBP were selected because they were 'likely' to have responsive records" but "do not contain any averment that all locations 'likely to contain responsive materials' were searched" or that a searched included "'all files likely to contain responsive materials[.]'" ECF 32, p. 6 (quoting *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999)); p. 7 (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

Appellee filed a Renewed Motion for Summary Judgment in June 2022. ECF 35, also filing a second supplemental declaration from Patrick Howard. ECF 35-1. This second declaration claims that Appellee found over 13,000 potentially responsive pages of records, of which only 54 were ultimately found to be responsive. *Id.,* ¶8. Importantly, this successor declaration attempts to cure the original's primary defect by alleging that "[a]ll agency files and records likely to contain responsive records were searched." *Id.* The declaration also claimed that CBP had searched "the Office of Professional Responsibility, Office of Field Operations, U.S. Border Patrol, Office of Information Technology, and Office of Chief Counsel."

*The McAleenan email provided evidence of a broader CBP investigation.*
In her opposition brief, Appellant pointed to a September 22, 2015 email indicating a much broader investigation, one involving employees and offices outside the scope of Appellee's FOIA search. ECF 37. The email was sent by Megan Mack,

then the Department of Homeland Security's Office for Civil Rights and Civil Liberties ("CRCL"), to Deputy CBP Commissioner Kevin McAleenan and CBP Office of Internal Affairs ("IA") investigator Matt Klein. ECF 37-1, p. 2. In it, Mack recounts the allegation of assault against Appellant committed by Appellee's employees. *Id.* Critically, Mack states that CRCL was "logging the complaint and forwarding to the Inspector General per our usual procedures." She noted CRCL "would like to jointly investigate with" CBP IA if the Inspector General "doesn't retain the investigation and IA investigates." The email also included photos of the bruising sustained by Appellant and a September 17, 2015 physician's note that Appellant might have sustained a concussion. Appellee had not produced this email as a result of its FOIA search of its five employees' emails but as part of its other productions.

Appellant pointed to this email as evidence that Appellee's search was too narrow to satisfy FOIA's adequacy standards. In particular, Appellant pointed to CBP's failure to search McAleenan's email, CBP IA, or other agency components whose participation was implicated by the email.

In its final memorandum opinion, *Sabra v. CBP*, Civil Action No. 20-681 (CKK), 2023 U.S. Dist. LEXIS 15577 (D.D.C. Jan. 31, 2023); ECF 45, the District Court disagreed and granted Appellee summary judgment, adopting many of the positions posited in Appellee's final reply brief. *See* ECF 39. The District Court

decided that the new declaration provided proof of an adequate search, relying on four key conclusions: (1) despite the existence of the McAleenan email, Appellant's claimed existence of other responsive emails remained speculative; (2) Appellee's search terms were not unreasonably narrow; (3) Appellant should have sent separate FOIAs to the Inspector General and CRCL, and; (4) Appellee did in fact search the IA because, as alleged in its final pleading, OPR is the new name for IA.

This appeal followed. Appellee filed a motion for summary affirmation. This Court denied Appellee's motion. *Sabra v.* CBP, No. 23-5069, 2023 U.S. App. LEXIS 28955 (D.C. Cir. Oct. 31, 2023).

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment *de novo*. *Judicial Watch, Inc. v.*

*DOD*, 913 F.3d 1106, 1110 (D.C. Cir. 2019) (citing *Morley v. CIA*, 508 F.3d 1108,

1114 (D.C. Cir. 2007)).

Parties are entitled to pretrial judgment on the pleadings "if the moving party

demonstrates that no material fact is in dispute and that it is entitled to judgment as

a matter of law." *Schuler v. PricewaterhouseCoopers*, *LLP*, 514 F.3d 1365, 1370,

379 U.S. App. D.C. 456 (D.C. Cir. 2008) (quoting *Peters v. Nat'l R.R. Passenger*

*Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992)).

## SUMMARY OF ARGUMENT

Appellant provided more than ample proof of a deficient search such that "a review

of the record raises substantial doubt, particularly in view of 'well defined requests

and positive indications of overlooked materials,'" and thus "summary judgment is

inappropriate." *Valencia-Lucena,* 180 F.3d at 326 (quoting *Founding Church of*

*Scientology, Inc. v. National Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)).

A cramped search of five employee email accounts is facially inadequate for

properly responding to Appellant's broad request for investigation records and

communications. This inadequacy is undeniable in light of the McAleenan email,

Addm004, and the broader investigations referenced therein. Indeed, CBP's written

policy requires a robust civil rights investigation, one encompassing more than the

five employees being investigated. CBP follows this policy, as shown by two CBP

investigators arriving at Appellant's North Carolina house for an interview. ECF 1, ¶ 70.

In a FOIA case, the agency bears the burden of justifying nondisclosure. 5 U.S.C. § 552 (a)(4)(B) ("the burden is on the agency to sustain its action"). In order to prove fulfillment of its FOIA duties, CBP needs to "demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents," *Watkins L. & Advoc., PLLC v. U.S. Dep't of Just.*, 78 F.4th 436, 442 (D.C. Cir. 2023) (quoting *Valencia-Lucena*, 180 F.3d at 325), and that it "perform[ed] more than a perfunctory search" to identify Appellant's responsive records. *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011); *see also In re Clinton*, 973 F.3d 106, 116 (D.C. Cir. 2020). "[T]his court has required agencies to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents." *Valencia-Lucena,* 180 F.3d at 325.

However, a FOIA request does not initiate an endless quest. In assessing search adequacy, "a district court is not tasked with uncovering whether there might exist any other documents possibly responsive to the request, but instead, asks only whether the search for [the requested] documents was adequate." *In re Clinton*, 973 F.3d at 116 (internal quotation marks and emphasis omitted) (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

Thus, "[a]n agency need not search every record system or demonstrate that all responsive documents were found and that no other relevant documents could possibly exist," *Watkins L. & Advoc., PLLC*, 78 F.4th at 442 (internal quotation marks omitted) (quoting *Oglesby,* 920 F.2d at 68). Yet an agency "may not limit its search to only one record system if there are others that are likely to turn up the information requested," *Montgomery v. Internal Revenue Serv.*, 40 F.4th 702, 714 (D.C. Cir. 2022) (internal quotation marks omitted) (quoting *Oglesby*, 920 F.2d at 68).

Thus, CBP needed to demonstrate beyond material doubt that it "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested," *Watkins L. & Advoc., PLLC*, 78 F.4th at 442 (quoting *Oglesby*, 920 F.2d at 68). That demonstration required submitting to the court a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched," *Shapiro v. U.S. Dep't of Just.*, 40 F.4th 609, 612-13 (D.C. Cir.), *cert. denied*, 143 S. Ct. 526, 214 L. Ed. 2d 301 (2022) (quoting *Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402, 433 (D.C. Cir. 2017)).

It did not. As described below, CBP instead submitted conclusory, nonspecific declarations failing to address positive indications of overlooked

material, thereby draining its declarations of the presumption of good faith. *See Public Citizen Health Research Group v. FDA*, 185 F.3d 898, 906 (D.C. Cir. 1999); *see also Shapiro*, 40 F.4th at 613 ("Summary judgment is inappropriate if a review of the record raises substantial doubt as to the search's adequacy, particularly in view of well-defined requests and positive indications of overlooked materials.") (quoting *Reps. Comm. for Freedom of Press*, 877 F.3d at 402).

And because Appellee failed to conduct a proper search, the District Court erred by denying Appellant's motion for judgment on the pleadings.

## ARGUMENT

I.   *The District Court erred in deeming CBP's search adequate where it failed to search the email of the deputy CBP commander or follow up on similar obvious leads.*

Appellant sought essentially any evidence in Appellee's possession that she was assaulted by CBP employees based on her religion when she tried crossing the crossing the U.S.-Mexico border. Yet the District Court found sufficient that Appellee searched the email boxes of only those five employees who would have witnessed the assault and only a limited number of CBP offices.

**A. CBP overlooked positive indicia of responsive records when it failed to conduct an iterative search of Deputy Commissioner McAleenan's email, an obvious lead for other responsive records, as indicated by CBP's investigation policy.**

The District Court erred in deciding that the McAleenan email—written by a CRCL employee to the CBP Deputy Commissioner and an IA investigator—was

not indicia of overlooked material and that a search of five CBP employees constituted a sufficient search for all of CBP's emails related to the assault.

Appellee defends its decision not to search McAleenan's email by claiming that the "email is an informational notice and does not indicate that the recipients would be involved in any actions that would cause them to become custodians of additional responsive records." Appellee Mot. For Sum. Aff., p. 7.

The email's contents belie Appellee's conclusion. Indeed, the email is sent from CRCL to the CBP Deputy Commissioner informing him that CRCL "would like to jointly investigate with" CBP IA if the Inspector General "doesn't retain the investigation and IA investigates." Thus, some natural communications creating further responsive records would be for McAleenan to inquire as to who ultimately took on the investigation and its outcome.

McAleenan would likely have had a role in creating further responsive records because such records are contemplated in Appellee's own policy statements. As the email indicates, Appellee does not casually brush aside civil rights complaints but, as would be expected of a federal law enforcement agency, has an entire administrative architecture devoted to receiving and properly investigating civil rights complaints like Appellant's. That architecture is described in the current CBP civil rights policy, adopted in 2011, CBP Directive No. 2130-021, "Roles and Responsibilities of U.S. Customs and Border Protection

21

Component Offices and Employees Regarding Civil Rights and Civil Liberties Matters."[2] This CBP directive describes the different roles and interactions of various DHS components and subcomponents in investigating a CBP civil rights complaint. DHS CRCL's role includes investigating civil rights complaints not investigated by the DHS Inspector General, ¶ 6.1.1.6., while IA is tasked with "[r]eceiving, documenting, and if appropriate referring" all allegations of CBP employee misconduct to the appropriate entity. ¶ 6.3.2. CBP's Office of Diversity and Civil Rights must, among other tasks, lead "CBP's efforts to gather all information necessary, ensuring a free flow of information between CBP and CRCL to facilitate the timely and thorough completion of CRCL investigations. In particular, DCR will ensure that reports of investigation are returned to CRCL within 180 days. ¶6.2.5. The directive also requires subcomponent cooperation, such as requiring that "CRCL issue to DCR a draft report on CRCL's finding and recommendations for corrective action or appropriate enforcement actions at the conclusion of the investigation." ¶ 8.1. CBP has fifteen days to provide reviews and comments to CRCL. *Id.* DCR weighs the possibility of implementing CRCl's recommendations, and then, in the final investigatory step, DCR "will obtain

---

[2] https://www.cbp.gov/sites/default/files/assets/documents/2020-Feb/cbp-directive-2130-021.pdf Plaintiff could not have raised this policy in her initial pleading because, according to CBP's website, it was not posted until 2020. *See* https://www.cbp.gov/document/directives/cbp-directive-no-2130-021-role-and-responsibilities-us-customs-and-border.

clearance from the CBP Commissioner or Deputy Commissioner" regarding any recommendations. ¶ 8.3.

The McAleenan email alone provides "raises substantial doubt, particularly in view of 'well defined requests and positive indications of overlooked materials,' summary judgment is inappropriate." Valencia-Lucena, 180 F.3d at 326 (*citing Founding Church of Scientology, Inc. v. National Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)).

## B. An adequate search required searching other locations where records were likely to be found.

### 1. *The District Court erred by resting its ruling on the unsworn factual assertion, made outside of CBP's declarations, that Appellee had searched IA.*

Crediting the Second Supplemental Patrick Howard Declaration, the District Court found sufficient that CBP searched "the Office of Professional Responsibility, Office of Field Operations, U.S. Border Patrol, Office of Information Technology, and Office of Chief Counsel." ECF 45, p. 6-7. The District Court's finding that CBP searched all CBP subcomponents likely to contain responsive records rested on CBP's assertion that the Office of Professional Responsibility had subsumed the Office of Internal Affairs. Memorandum Opinion, ECF 45, p. 11.

It is axiomatic in FOIA cases that the factual assertions used to support the government's motion for summary judgment must be contained in an affidavit or other sworn declaration. *See, e.g., Shapiro*, 40 F.4th at 612-13. Yet this critical

assertion does not appear in any of the three record custodian declarations. ECF

24-3, 35-1. Instead, CBP made this claim in the case's final pleading. CBP's Reply

in Support of Renewed Motion for Summary Judgment, ECF 39, p. 4. ("As for the

Office of Internal Affairs, CBP did search that office, now known as 'the Office of

Professional Responsibility.'"). By waiting until the very final pleading, Appellee

robbed Appellant of the opportunity to point out that an unsworn pleading cannot

provide the factual basis for summary judgment. Had Appellant been able to do so,

she would have pointed out that neither declaration contains any mention of the

Office of Internal Affairs being renamed as OPR or, critical here, that OPR would

contain all of the same files as the Office of Internal Affairs.[3]

  2. *DHS regulations required CBP to refer Plaintiff's request to other DHS*
   *components.*

The District Court erred in concluding that it was incumbent upon Appellant to file

separate FOIAs with the CRCL and OIG, the other DHS components implied by

the McAleenan email to possess further responsive records. *See* ECF 45, p.10-11.

The District Court decided that because CRCL and OIG have their own record

systems outside of CBP control, Appellant bore the burden of filing requests for

responsive records.

---

[3] CBP Directive No. 2130-021 indicates yet another omission: DCR, one of the key investigatory subcomponents.

For temporal context, in ending a 2020 FOIA case, the District Court decided in 2023 that the Appellant should have known in 2017 to file a FOIA request with two different DHS components regarding a 2015 assault.

Without agency guidance, how could the victim of a civil rights violation possibly know that they should have filed their original request with an entirely different DHS component, or that a request to one subcomponent will not yield all responsive records?[4]

They can't. And that is why DHS places the onus of referral on subcomponents receiving FOIA requests. "Where a component's FOIA office determines that a request was misdirected within DHS, the receiving component's FOIA office shall route the request to the FOIA office of the proper component(s)." 6 CFR 5.4(c). This DHS regulation accords with the text of the FOIA itself, which contemplates "consultation . . . with another agency having a substantial interest in the determination of the request." 5 U.S.C. § 552(a)(6)(B)(iii)(III). *See, e.g., Blank Rome LLP v. Dep't of the Air Force*, No. 15-cv-1200-RCL, 2016 U.S. Dist. LEXIS 128209, at *17 (D.D.C. Sep. 20, 2016) ("Finally, after determining that responsive documents may have existed in the control of other agencies, defendant referred plaintiff's request to the appropriate

---

[4] For additional context, Appellant's responsive CRCL records likely no longer exist, as CRCL destroys referred records after seven years. *See Privacy Impact Assessment for the Office for Civil Rights and Civil Liberties Matters Database,* May 5, 2010, p.10.

agencies.").*C.f., Ancient Coin Collectors Guild,* 641 F.3d at 515 ("it is reasonable to expect State to inform the court and plaintiffs whether backup tapes of any potential relevance exist"). Appellee knew that other subcomponents were involved in investigating Appellant's detention and assault and thus had a substantial interest in this request. That knowledge required—and still requires—Appellee to refer Appellant's request to CRCL and OIG.

II.   *The District Court erred in deciding that Appellee conducted an adequate keyword search despite its omission of key words and phrases.*

Aside from its unreasonably narrow scope, Appellee's search failed to use adequate search terms reasonably calculated to find responsive records. The Appellee searched its five employees' emails for the following words: "1. Sabra 2. Cousinsabra 3. Cousin-Sabra 4. Syria 5. Syrian 6. Syrians."

Sufficiency of search terms requires examining context but also the original FOIA request's language. *Watkins L. & Advocacy, PLLC,* 78 F.4th at 444-45 (omission of four search terms "does not render the agency's search unreasonable, especially because nothing in Watkins's FOIA request indicated that those terms were essential.") That the majority of search terms do not appear in the FOIA request cuts against a search's reasonability. *See Rodriguez v. DOD,* 236 F. Supp. 3d 26, 40 (D.D.C. 2017) ("The fact that three out of the four key search terms that Lt. Col. Oakley purportedly used appear nowhere on the face of Plaintiff's request .

. . is also evidence that the search terms he employed were not reasonably calculated to uncover all responsive documents.") (citing *Maynard v. C.I.A.*, 986 F.2d 547, 559-60 (1st Cir. 1993)). This holds true especially where the narrow search terms overlook responsive records. *Id.* (Plaintiff pointed to "at least one e-mail communication that 'related to the same subject matter' as his FOIA request, but was overlooked because of the highly-detailed terms.").

Six search terms is already a parsimonious number at best. *See Watkins L. & Advoc., PLLC*, 78 F.4th at 444 (describing FBI's use of twenty-seven different search terms). And only the first of Appellee's six search terms would have appeared in Appellant's FOIA request. The latter five terms do not appear at all. *See* ECF 1, ¶75. Appellant's name is not "Cousinsabra." Appellant's name is not "Cousin-Sabra." Barring typos, an exact search for either word should yield zero results, because, as Appellee knows, Appellant's name is "Fleta Christina Cousin Sabra."

Likewise, Appellant is a U.S. citizen. Appellee also knows this—it's why she was let back into her country. And although she was accompanying a Syrian family, nothing in the pleadings indicate that she herself is a Syrian or from Syria. Appellee's unnecessarily broad search explains it initially finding 14,170 pages of potentially responsive records, of which only 430 were actually related to

Appellant. ECF 45, p. 2. Further illustrating the futility of these search terms, only one of them appears in the McAleenan email: "Sabra."

As Appellant suggested before the District Court, a sufficient search would have included information directly tied to Appellant's civil rights complaint, such as her proper name, and the case number assigned to her investigation. As Appellee had recently completed the investigation into Appellant's assault allegations, her requested records should have been readily available.

These obvious failures to conduct an adequate search negate any presumption of good faith, requiring another search and declaration to remedy.

III.    *The District Court erred by failing to grant Appellant judgement as a matter of law based on Appellee's three-year failure to timely take required FOIA actions.*

Because Appellee failed to conduct an appropriate search or issue a final determination, as discussed above, the District Court erred in denying Appellant the injunctive relief requested in its motion for judgment on the pleadings. Thus, if this Court agrees that Appellee conducted an inadequate search or failed to issue a determination, then no material facts are in dispute and Appellant is entitled to judgment as a matter of law.

In response to an appropriate record request, FOIA requires every federal agency to "make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A); *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57

(D.C. Cir. 2003). Upon receiving a FOIA request, an agency has a default 20 days in which to provide the requester a "determination and the reasons therefore." 5 U.S.C. § 552(a)(6)(A)(i)(I). A proper determination requires that "the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, ("CREW") 711 F.3d 180, 188 (D.C. Cir. 2013); *see also Oglesby*, 920 F.2d at 65. Thus, a complete determination also requires a statutorily-sufficient search conducted in good faith, otherwise an agency cannot complete its record review or determine the scope of responsive records. *See CREW*, 920 F.2d at 65. After completing and conveying its determination, an agency must make the responsive records promptly available. 5 U.S.C. § 552(a)(6)(C)(i) ("Upon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request.")

Appellee provided no response to Appellant's 2017 FOIA request until after being sued in 2020. Appellant moved for judgment on the pleadings, requesting in relevant part that Appellee "make records promptly available to her," something it had failed to do "in the three years since she sought them." ECF 7, p. 1. By the

time the District Court ruled on that motion, Appellee claimed to have completed its search and had made its first production and would finish production in an estimated two to eight months. ECF 23, p.2-3.

In its ruling, the District Court recognized an injunction ordering record release as the proper remedy for a FOIA timing violation. ECF 23, p. 8-9. However, that court denied Appellant's requested relief on the grounds that Appellee "has provided its response," and "[o]nce an agency has made its final determination under § 552(a)(6)(A), the *timeliness* of that determination is no longer a live controversy fit for judicial review." *Id.* at 8-10 (quoting *Muttit,* 926 F. Supp. 2d at 296).

The Court also included the following string cite of cases:
> *see also Atkins v. Dep't of Justice*, No. 90-5095, 1991 U.S. App. LEXIS 22309, 1991 WL 185084, at *1 (D.C. Cir. Sept. 18, 1991) ("The question whether [the agency] complied with the [**FOIA**'s] time limitations in responding to [the plaintiff's] request is moot because [the agency] has now responded to this request."); *Judicial Watch. Inc. v. U.S. Naval Observatory*, 160 F. Supp. 2d 111 (D.D.C. 2001) (holding that the court "no longer has subject matter jurisdiction over the claim that defendant failed to expedite processing of plaintiff's request" if the defendant has "provide[d] a complete response to the request for records").

Next, it further cabined its response, clarifying that it "makes no findings at this stage as to whether Defendant's search efforts were adequate or whether its withholding determinations were warranted," *id.* at n.3, and that it "does not

resolve at this point whether Defendant's response is 'complete' under FOIA." The District Court concludes by saying that it would address these matters in the parties cross-motions for summary judgment.

**A. The District Court erred in deciding that Appellee's partial response barred Appellant's motion for judgment on the pleadings.**

Appellant accepts that a proper determination and completed production bars injunctive FOIA relief. This rule sounds in justiciability; once a plaintiff receives the records sought, no controversy exists to be cured by judicial action. *See, e.g., Ackerly v. Ley*, 420 F.2d 1336, 1340 (1969) ("the only specific relief appellant seeks is compelled disclosure and that has been rendered moot by the disclosure in this instance which has now actually been made"); *see generally Am. Historical Ass'n v. Nat'l Archives & Records Admin.*, 310 F. Supp. 2d 216 (D.D.C. 2004) (finding FOIA case not justiciable where researchers already granted access to requested materials).

The decisions cited by the District Court can be read as cutting off FOIA justiciability at different points: (1) the "final determination, *Muttit,* 926 F. Supp. at 296; (2) when the agency "has now responded to [the] request," *Atkins*, 1991 WL 185084, at *1; or (3) when the agency has provided a "complete response," *Judicial Watch. Inc.,*160 F. Supp. 2d at 11. *Judicial Watch* hews most closely to

justiciability limitations as even after a response or final determination, a controversy over record production can remain.

Under *Atkins*, the most defendant-friendly standard, Appellee had indeed already filed a response, albeit an incomplete one. But whatever the controversy in *Atkins*, here the issue was whether "the records" had been made "promptly available," not whether any response had been provided. Thus, the District Court could and should have granted Appellant's motion. Furthermore, it is unclear how a court could rule on cross summary judgment motions while being powerless to address a judgment on the pleadings raising the same issues.

Finally, if this Court decides either of the two initial appellate issues in Appellant's favor, then under *CREW,* Appellee's failure to make an adequate search means that this case still lacks a final determination.

### B. Carefully articulating FOIA justiciability will facilitate swifter resolution of FOIA cases and reduce the number of future FOIA appeals.

To prevent similar cases in the future, this Court should expressly reinforce that a FOIA case contains a justiciable controversy until disclosure of all responsive records, not merely until issuance of a response or even a final determination. As written, FOIA is not a model of procedural transparency, allowing ample room for confusion over its justiciability requirements. Doing so would also secure the motion for judgment on the pleadings' procedural role as a swifter means of FOIA

resolution. Here, it took a full year after denial of Appellant's motion for Appellee to lose its initial summary judgment motion, ECF 32, p. 11. By granting the initial motion, the District Court could have resolved this case two years ago and prevented this appeal.

## CONCLUSION

This Court should reverse the District Court and remand with instructions to enter an injunction in Appellant's favor requiring Appellee to conduct an appropriate search and produce records in a timely manner and refer Appellant's requests to other appropriate agencies.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(e)(1), because this brief contains 7959 words in total. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

/s/ Andrew Fels_____
Andrew Fels, Esq.
TN BPR #036005
Al Otro Lado
3214 Fountain Park Blvd.
Knoxville, TN 37917
865-567-4881
andrew@alotrolado.org

**ORAL ARGUMENT NOT YET SET**

**No. 23-5069**

**UNITED STATES COURT OF APPEALS
DISTRICT OF COLUMBIA CIRCUIT**

————————————————

**FLETA SABRA**

*Plaintiff-Appellant,*

**v.**

**U.S. CUSTOMS AND BORDER
PROTECTION,**

*Defendant-Appellee.*

————————————————

On Appeal for the United States District Court
for the District of Columbia, No. 1:20-cv-681 (CKK)
Before the Honorable Colleen Kollar-Kotelly

**ADDENDUM TO THE OPENING BRIEF OF PLAINTIFF-APPELLANT
FLETA SABRA**

————————————————

Andrew Fels, Esq.
Al Otro Lado
3214 Fountain Park Blvd.
Knoxville, TN 37917
865-567-4881
andrew@alotrolado.org

December 11, 2023

## FED. R. APP. P. 28(F) ADDENDUM TABLE OF CONTENTS

**5 U.S.C. § 552**                                              **Addm001**

**6 CFR 5.4: Responsibility for responding to requests**    **Addm002**

**CBP DIRECTIVE NO. 2130-021**                  **Addm003**

**McAleenan Email**                                    **Addm004**

**Addm001**

**5 U.S.C. § 552**

### 5 U.S.C. § 552(a)(3)(A)

Except with respect to the records made available under paragraphs (1) and (2) of this subsection, and except as provided in subparagraph (E), each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

### 5 U.S.C. § 552(a)(4)(B)

On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action. In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).

### 5 U.S.C. § 552(a)(6)

**(A)** Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall—
**(i)** determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of—
**(I)** such determination and the reasons therefor;
**(II)** the right of such person to seek assistance from the **FOIA** Public Liaison of the agency . . .

**5 U.S.C. § 552(a)(6)(C)**

(i)    . . . If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records. Upon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request. Any notification of denial of any request for records under this subsection shall set forth the names and titles or positions of each person responsible for the denial of such request.

**Addm002**

**6 CFR 5.4: Responsibility for responding to requests.**

**(c)** *Re-routing of misdirected requests.* Where a component's FOIA office determines that a request was misdirected within DHS, the receiving component's FOIA office shall route the request to the FOIA office of the proper component(s).

**Addm003**

## CBP DIRECTIVE NO. 2130-021

DATE: June 3, 2011
ORIGINATING OFFICE: OC: DCR
SUPERSEDES:
REVIEW DATE: June 2014

SUBJECT: Roles and Responsibilities of U.S. Customs and Border Protection Component Offices and Employees Regarding Civil Rights and Civil Liberties Matters

1 PURPOSE. This directive defines the roles and responsibilities of U.S. Customs and Border Protection's (CBP) personnel with regard to civil liberties allegations filed by members of the public and individuals detained for law enforcement purposes based on interactions with CBP personnel.

2 POLICY. CBP shall treat all individuals in a non-discriminatory manner, with respect to all forms of protected status under federal law, regulation, Executive Order, or policy, with full respect for individual rights including equality under the law, due process, freedom of expression and religion, and freedom from excessive force, unreasonable searches and seizures, and unlawful intrusions into personal privacy. To exemplify these commitments, CBP will maintain an efficient and effective external civil rights and civil liberties complaint-processing program focused on gathering all the relevant facts and evidence necessary to resolve complaints. CBP shall adhere to the core premise that civil rights and civil liberties protection is not only an ethical and legal imperative but also a practical necessity to maintaining and enhancing the public's level of trust in federal law enforcement.

. . .

6.1 DHS Office for Civil Rights and Civil Liberties (CRCL). CRCL supports the Department's mission to secure the nation while preserving individual liberty, fairness, and equality under the law.

. . .

40

6.3 Office of Internal Affairs (OIA), Joint Intake Center (JIC). OlA is responsible for the following:

6.3.2 Receiving, documenting and if appropriate referring to the appropriate investigative entity all allegations concerning CBP employee misconduct, including alleged violations of civil rights, civil liberties and racial, ethnic, and/or religious profiling.

. . .

8.1 CRCL will issue to DCR a draft report on CRCL's findings and recommendations for corrective action or appropriate enforcement actions at the conclusion of the investigation. CBP will review and provide comments to CRCL within 15 calendar days.

8.2 Upon receipt of CRCL' s final report of findings and recommendations, the Executive Director, DCR, will consult with the necessary office(s) to determine if the recommendations can be fully or partially implemented.

8.3 The Executive Director, DCR, will obtain clearance from the CBP Commissioner or Deputy Commissioner, and shall notify CRCL of CBP's concurrence or non-concurrence with each recommendation, and provide an action plan for implementation of all recommendations with which it concurs, within 30 calendar days.

# Addm004
# McAleenan Email

## (b) (6), (b) (7)(C)(IA)

**Subject:** FW: Complaint Against CBP
**Attachments:** DukeMedicinePage2.pdf; Post handcuffing (2).jpg

**From:** (b) (6), (b) (7)(C)
**Sent:** Tuesday, September 22, 2015 3:36 PM
**To:** MCALEENAN, KEVIN K.
**Cc:** KLEIN, MATTHEW (IA) (b) (6), (b) (7)(C)
**Subject:** FW: Complaint Against CBP

Dear Kevin,

I am forwarding a serious complaint we received yesterday, from Ms. Fleta Christina ("Khalilah") Sabra, who has helped us with a few events in NC and TX in the past.

On September 11, 2015, Ms. Sabra, a USC, crossed into the U.S. at the Tijuana Otay Sentri Line Border Crossing, accompanying several (b) (6), (b) (7)(C), (b) (7)(F) who are related to a relative of hers. Her email details several serious allegations, principally against one Border Patrol officer, with a nametag that read (b) (6), (b) (7)(C). Ms. Sabra writes that the officer kicked her, forced her head against a wall causing severe pain and a possible concussion, made a religious racist insult, forcibly and abruptly removed her headscarf, and hung Ms. Sabra's bag from handcuffed hands in retaliation for Ms. Sabra stating that she had rights. The attachments include a photograph of bruised wrists, and medical letter regarding concussion. There are additional allegations.

In addition, Ms. Sabra writes that she was told that it was not permissible for individuals who enter the U.S. by car to (b) (6), (b) (7)(C), (b) (7)(F) and that the (b) (6), (b) (7)(C), (b) (7)(F) would have to walk across the border. Ms. Sabra also writes that when she said her rights were being violated, was told that the Constitution did not work there.

We are logging the complaint and forwarding to the Inspector General per our usual procedures. If the IG doesn't retain the investigation and IA investigates, we would like to investigate jointly with IA.

Thank you for your attention. I'm copying Matt Klein for awareness in case he has received this complaint separately.

Best,
(b) (6), (b) (7)(C)

(b) (6), (b) (7)(C)
Officer for Civil Rights and Civil Liberties
U.S. Department of Homeland Security
(b) (6), (b) (7)(C) (office)

**From:** Khalilah Sabra [mailto:khalilahsabra@gmail.com]
**Sent:** Monday, September 21, 2015 06:31 PM
**To:** CRCLCompliance
**Cc:** (b) (6), (b) (7)(C)

1

**PROOF OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the District of Columbia Circuit

by using the appellate CM/ECF system on December 11, 2023.

     I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.

Dated: December 11, 2023.

/s/ Andrew Fels_____
Andrew Fels, Esq.
TN BPR #036005
Al Otro Lado
3214 Fountain Park Blvd.
Knoxville, TN 37917
865-567-4881
andrew@alotrolado.org