# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

FLETA CHRISTINA COUSIN SABRA,

Appellant,

v.

U.S. CUSTOMS AND BORDER PROTECTION,

Appellee.

On Appeal from the United States
District Court for the District of Columbia

## BRIEF FOR THE APPELLEE

MATTHEW M. GRAVES
United States Attorney

BRIAN P. HUDAK
JANE M. LYONS
Assistant United States Attorneys

JOHNNY H. WALKER
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 252-2511

Civ. A. No. 20-0681

# CERTIFICATE AS TO
# PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

**Parties and Amici.** The plaintiff-appellant is Fleta Sabra. The defendant-appellee is U.S. Customs and Border Protection. There is no amicus.

**Rulings Under Review.** As issue in this appeal is the January 31, 2023, memorandum opinion and order by Judge Colleen Kollar-Kotelly granting the defendant's renewed motion for summary judgment. The opinion is available in the joint appendix at JA__ and on Westlaw at 2023 WL 1398473. Also at issue in this appeal is Judge Kollar-Kotelly's March 2, 2021, memorandum opinion and order denying the plaintiff's motion for judgment on the pleadings. That opinion is in the joint appendix beginning at JA__ and on Westlaw at 2021 WL 796166.

**Related Cases.** This case has not previously been before this Court. Undersigned counsel is unaware of any pending related cases.

<div align="right">
 /s/ Johnny H. Walker  
JOHNNY H. WALKER  
Assistant United States Attorney
</div>

# CONTENTS

*Page*

*Table of Authorities* ............................................................... ii

*Glossary* .................................................................................. iv

STATEMENT OF JURISDICTION .................................... 1

STATEMENT OF THE ISSUES ........................................... 1

PERTINENT STATUTES ...................................................... 1

STATEMENT OF THE CASE ............................................... 2

    A.   Statutory Background ............................................ 2

    B.   Factual Background ................................................ 3

    C.   Prior Proceedings .................................................. 3

SUMMARY OF THE ARGUMENT ..................................... 6

STANDARD OF REVIEW ...................................................... 8

ARGUMENT ............................................................................. 8

I.   CBP Conducted An Appropriate Search ...................... 8

    A.   CBP's Search Was Reasonably Calculated to Discover the Requested Documents ..................... 8

    B.   Sabra's Arguments Are Without Merit. ............. 13

II.  Sabra Was Not Entitled to Judgment on the Pleadings. .............. 19

CONCLUSION ....................................................................... 22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# AUTHORITIES

*Page(s)*

## Cases

*Atkins v. Dep't of Just.*,
    946 F.2d 1563 (D.C. Cir. Sept. 18, 1991) ......................................... 20

*Cannon v. District of Columbia*,
    717 F.3d 200 (D.C. Cir. 2013) ......................................................... 15

*Dep't of Just. v. Reps. Comm. for Freedom of Press*,
    489 U.S. 749 (1989) ........................................................................ 2

*Hall v. Virginia*,
    385 F.3d 421 (4th Cir. 2004) ......................................................... 15

*Interralde v. Comptroller of Currency*,
    315 F.3d 311 (D.C. Cir. 2003) ......................................................... 13

*Khine v. Dep't of Homeland Sec.*,
    943 F.3d 959 (D.C. Cir. 2019) ......................................................... 20

*Kowalczyk v. Dep't of Just.*,
    73 F.3d 386 (D.C. Cir. 1996) ......................................................... 13

*Mobley v. CIA*,
    806 F.3d 568 (D.C. Cir. 2015) .................................................... 9, 13

*Montgomery v. IRS*,
    40 F.4th 702 (D.C. Cir. 2022) ......................................................... 13

*Newport Aeronautical Sales v. Dep't of Air Force*,
    684 F.3d 160 (D.C. Cir. 2012) ......................................................... 8

*Oglesby v. Dep't of Army*,
    920 F.2d 57 (D.C. Cir. 1990) ........................................................... 9

*Payne Enters., Inc. v. United States*,
    837 F.2d 486 (D.C. Cir. 1988) .................................................. 20, 21

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ................................................... 9, 13

*Seed Co. Ltd. v. Westerman, Hattori, Daniels & Adrian, LLP*,
    961 F.3d 1190 (D.C. Cir. 2020) ........................................................ 8

*Shapiro v. Dep't of Just.*,
    40 F.4th 609 (D.C. Cir. 2022) ........................................................ 20

*Steinberg v. Dep't of Just.*,
    23 F.3d 548 (D.C. Cir. 1994) ........................................................ 13

*Tunchez v. Dep't of Just.*,
    No. 10-5228, 2011 WL 1113423 (D.C. Cir. Mar. 14, 2011) .............. 21

*Valencia-Lucena v. U.S. Coast Guard*,
    180 F.3d 321 (D.C. Cir. 1999) ........................................................ 9

*Watkins L. & Advoc., PLLC v. Dep't of Just.*,
    78 F.4th 436 (D.C. Cir. 2023) .................................................. 9, 19

*Weisberg v. Dep't of Just.*,
    745 F.2d 1476 (D.C. Cir. 1984) .................................................... 19

*Whiting v. AARP*,
    637 F.3d 355 (D.C. Cir. 2011) ...................................................... 15

**Statutes**

5 U.S.C. § 552 ................................................................................ 2
5 U.S.C. § 552(a)(4)(B) .................................................................. 1
5 U.S.C. § 552(a)(6) .................................................................. 1, 2
28 U.S.C. § 1291 ............................................................................ 1
28 U.S.C. § 1331 ............................................................................ 1

**Other**

6 C.F.R. § 5.4(c) ............................................................................ 16
6 C.F.R. § 5.5(e)(4) ........................................................................ 2
89 Fed. Reg. 14369, 14369 (Feb. 27, 2024) ...................................... 17

# GLOSSARY

CBP        United States Customs and Border Protection

E-STAR    Enforcement Action Statistical Analysis and
Reporting System

FOIA       Freedom of Information Act

JA          Joint Appendix

SIGMA    Secured Integrated Government Mainframe Access

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). The plaintiff timely appealed the final order granting the defendant's renewed motion for summary judgment. *See* Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.     Whether U.S. Customs and Border Protection ("CBP") conducted an adequate search for records responsive to Fleta Sabra's request under the Freedom of Information Act ("FOIA").

2.     Whether Sabra was entitled to declaratory or injunctive relief regarding the timing of CBP's responses to her requests for expedited processing and records after CBP had finished processing her request for records.

## PERTINENT STATUTES

All applicable statutes are contained in the brief for the appellant.

## STATEMENT OF THE CASE

### A.    Statutory Background

The Freedom of Information Act, 5 U.S.C. § 552, requires federal agencies to make certain records available upon request, *id.* § 552(a)(3), with the goal of ensuring "the citizens' right to be informed about what their government is up to." *Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989). After a person requests records, an agency must "make reasonable efforts to search for" those records, *id.* § 552(a)(3)(C), including by reviewing records "manually or by automated means" to "locat[e] . . . records which are responsive to a request," *id.* § 552(a)(3)(D).

FOIA directs agencies to respond to requests for records promptly. The statute requires an agency, upon receipt of a request, to determine within 20 days—or, in unusual circumstances, up to 30 days—whether it will make records available. 5 U.S.C. § 552(a)(6)(A)(i), (B)(i). A requestor may seek expedited processing if there is compelling need. *Id.* § 552(a)(6)(E)(i). An agency must ensure that any requests for expedited processing are granted or denied within ten days. *Id.* § 552(a)(6)(E)(ii)(I); 6 C.F.R. § 5.5(e)(4).

## B. Factual Background

Sabra alleges that, on September 11 and 12, 2015, she was degraded and mistreated by CBP agents as she attempted to assist a family of Syrian refugees apply for asylum at a port of entry. JA__[R.1 ¶¶ 16–68]. She subsequently filed a complaint through the Department of Homeland Security's Office of Civil Rights and Civil Liberties and was interviewed by investigators. JA__[R.1 ¶¶ 69–70].

On May 5, 2017, Sabra, through counsel, submitted a FOIA request to CBP seeking records "relating to the encounter between the requestor and U.S. Customs and Border Protection officials on or about September 11, 2015 – September 12, 2015 at the Otay Mesa OR San Isidro ports-of-entry." JA__[R.1 ¶¶ 74–75]; *see also* JA__9[R.35-1 ¶¶ 5–6]. She requested expedited processing. JA__[R.1 ¶ 9]. On May 9, 2017, CBP informed Sabra that it had assigned her request a tracking number and that it had been placed in the simple track for processing. JA__[R.1 ¶ 76].

## C. Prior Proceedings

On March 9, 2020, having still not received the requested records, Sabra, through counsel, filed this civil action. JA__[R.1]. She brought two counts. The first alleged that CBP was unlawfully withholding records

responsive to her request, JA__[R.1 ¶¶ 79–84], and the second alleged that CBP had a pattern or practice of failing to timely adjudicate requests for expedited processing, JA__[R.1 ¶¶ 85–90].

Between March 24 and April 28, 2020, CBP conducted a search of its component offices that were likely to possess the requested records. JA__[R.35-1 ¶¶ 7–8]. After several interim releases of records, CBP provided Sabra a final release of records on September 23, 2020, JA__[R.24-3 at 54], and, on November 12, 2020, a supplemental release based on a follow-up request by Sabra about other individuals who had been traveling with Sabra, JA__[R.24-3 at 55], even though those individuals were not mentioned in the original FOIA request.

Meanwhile, on May 21, 2020, Sabra moved for judgment on the pleadings, arguing that she was entitled to declaratory and injunctive relief because CBP had not issued a final determination on her FOIA request or decided her request for expedited processing within the statutory deadlines. JA__[R.7 at 1–2]. The district court denied the motion on March 2, 2021. JA__[R.23 at 1]. It reasoned that Sabra's request for relief related to the timing of CBP's response was moot

because CBP had completed its release of records, and the adequacy of that release was the subject of separate briefing. JA__[R.23 at 8–9].

Once CBP completed its releases of responsive records and conferred with Sabra to try to narrow disputes, the agency moved for summary judgment, R.24, which Sabra opposed, R.28. The district court denied the motion without prejudice, observing that, although CBP's declaration explained why the offices it searched were likely to contain responsive records, it did not affirmatively state that "all locations likely to contain responsive materials were searched." JA__[R.32 at 6] (citation omitted).

CBP renewed its motion for summary judgment with a revised declaration, R.35, and Sabra again opposed, R.37. This time the district court granted the motion. First, the court found that CBP's revised declaration described a reasonable search. JA__[R.45 at 5–7]. The court rejected Sabra's argument that additional custodians may possess responsive records as speculative, JA__[R.45 at 8–9], and disagreed with Sabra's assertion that CBP should have used additional search terms, JA__[R.45 at 9–10]. As for CBP's withholding of exempt information, the district court concluded that CBP properly invoked (1) Exemption 5 to

withhold three attorney work product documents related to an administrative tort claim filed by Sabra, JA__[R.45 at 13–14],[1] (2) Exemptions 6 and 7(C) to withhold identifying information of employees and members of the public, JA__[R.45 at 14–20], (3) Exemption 7(E) to withhold various forms of law-enforcement techniques and procedures, JA__[R.45 at 20–21], and (4) Exemption 7(F) to withhold information about claims for asylum, JA__[R.45 at 22–23].

This appeal followed. Sabra now challenges solely (1) the adequacy of CBP's search and (2) the district court's denial of her motion for judgment on the pleadings.

## SUMMARY OF THE ARGUMENT

1.  CBP conducted a search reasonably calculated to locate all documents responsive to Sabra's request for records about her September 2015 encounter with CBP agents. It performed an extensive email search of all five employees who were identified as witnesses to that encounter.

---

[1] On November 28, 2018, Sabra brought a civil action under the Federal Tort Claims Act related to her 2015 encounter with CBP. Sabra did not prosecute that action, prompting the district court to schedule a hearing on whether the case should be dismissed. Sabra thereafter voluntarily dismissed the case. *See Sabra v. United States*, Civ. A. No. 18-2690 (S.D. Cal. filed Nov. 28, 2018).

It also conducted searches of all CBP offices and systems likely have documents about the encounter, including the Office of Field Operations, the Office of Professional Responsibility, and the Chief Counsel Tracking System.

Sabra fails to show that CBP's search was inadequate. She points to a single email sent to the Deputy Commissioner of CBP informing him of Sabra's complaint, but that passive receipt does not indicate that the Deputy Commissioner would likely possess additional responsive records. To the contrary, the email indicates that Sabra's complaint would be investigated under the agency's "usual procedures."

And contrary to Sabra's misreading of the Department of Homeland Security's FOIA regulations, CBP was not required to propound her FOIA request on her behalf to other components of the Department that might also possess responsive records.

Finally, Sabra's contention that the agency should have used the number assigned to her complaint about the encounter as a search term is insufficient to undermine the adequacy of the search. The agency used broad search terms consisting of variations of Sabra's name and the nationality of the individuals who were applying for asylum at the time

of the relevant encounter. Those search terms easily satisfy CBP's obligations under FOIA.

2. The district court correctly denied Sabra's motion for judgment on the pleadings. Disputes about the timing of CBP's response to Sabra's requests for records and for expedited processing became moot once the agency completed its releases. Ample authority supports this conclusion. Sabra offers no authority or cogent reasoning to the contrary.

## STANDARD OF REVIEW

This Court generally reviews a district court's grant of summary judgment de novo. *Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012). A denial of a motion for judgment on the pleadings is also reviewed de novo. *Seed Co. Ltd. v. Westerman, Hattori, Daniels & Adrian, LLP*, 961 F.3d 1190, 1194 (D.C. Cir. 2020).

## ARGUMENT

## I. <u>CBP Conducted an Appropriate Search.</u>

### A. CBP's Search Was Reasonably Calculated to Discover the Requested Documents.

The locations and means of CBP's search were reasonably calculated to locate the requested records about Sabra's encounter with CBP agents on September 11, 2015. "When a plaintiff questions the

adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). "An agency need not 'search every record system' or 'demonstrate that all responsive documents were found and that no other relevant documents could possibly exist.'" *Watkins L. & Advoc., PLLC v. Dep't of Just.*, 78 F.4th 436, 442 (D.C. Cir. 2023) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999)). In reviewing the adequacy of a search, a "court may rely on a 'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Mobley v. CIA*, 806 F.3d 568, 580–81 (D.C. Cir. 2015) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

The most complete description of CBP's search appears in the second supplemental declaration of Patrick Howard, who oversees the processing of FOIA requests as the Branch Chief of CBP's FOIA Division. JA__[R.35-1 ¶ 1]. He describes a broad search by multiple CBP offices.

First, CBP reviewed the report of investigation generated in response to Sabra's complaint and identified five employees who were potential witnesses to the encounter that Sabra requested records about. JA__[R.35-1 ¶ 8.a]. The Office of Information Technology then searched all emails that were sent or received by those five individuals in the six months after the alleged encounter using the following search terms: Sabra, Cousinsabra, Cousin-Sabra, Syria, Syrian, and Syrians. JA__[R.35-1 ¶ 8.a]. Cousin is another name used by Sabra, JA__[R.24-3 at 42], and the references to Syria target the group of individuals whom she claims to have been helping to apply for asylum, JA__[R.1 ¶¶ 16–18]. This wide-net search yielded 13,794 pages of records, of which 54 pages were determined to be responsive. JA__[R.35-1 ¶ 8.a]. The responsive pages were released to Sabra with appropriate redactions for exempt information. JA__[R.35-1 ¶ 8.a].

CBP's Office of Field Operations also conducted searches. First, it searched the Secured Integrated Government Mainframe Access ("SIGMA") database, which contains, among other things, records about findings of inadmissibility or immigration status and about travelers held in custody at ports of entry. JA__[R.35-1 ¶ 8.b]. The Office searched

the SIGMA database using information from a "Record of Deportable/Inadmissible Alien" that was released in redacted form to Sabra. JA__[R.35-1 ¶ 8.b]. That search located a four-page document that was released to Sabra with redactions. JA__[R.35-1 ¶ 8.b]. In response to a follow-up request from Sabra, the Office of Field Operations later conducted additional searches of the SIGMA database to locate records about the individuals with whom Sabra was traveling when she reached the port of entry, JA__[R.35-1 ¶ 8.c], even though those individuals were not a subject of the initial FOIA request. This resulted in the release of 147 more pages of partially redacted records. JA__[R.35-1 ¶ 8.c].

Next, CBP's Office of Field Operations searched the Enforcement Action Statistical Analysis and Reporting System ("E-STAR"), where CBP maintains records related to all uses of force and assaults, using the date and location of the encounter and Sabra's full name. JA__[R.35-1 ¶ 8.d]. And it reviewed all reported uses of force in the San Diego Field Office (which encompasses both ports of entry identified in Sabra's request) for the months of August, September, and October 2015. JA__[R.35-1 ¶ 8.d]. CBP did not locate any responsive records in E-STAR. JA__[R.35-1 ¶ 8.d].

The Office of Professional Responsibility conducted a search of the Joint Integrity Case Management System, which contains records about employee misconduct and discipline and about criminal and administrative investigations, using Sabra's name and date of birth. JA__[R.35-1 ¶ 8.e]. This search located the report of investigation for Sabra's complaint with exhibits, including audio and video recordings. JA__[R.35-1 ¶ 8.e]. These documents and recordings were released to Sabra with redactions. JA__[R.35-1 ¶ 8.e].

CBP also searched its Chief Counsel Tracking System, which contains information about legal matters, using variations of Sabra's name: Sabra, Cousinsabra, and Cousin-Sabra. JA__[R.35-1 ¶ 8.f]. This search located documents about Sabra's tort claim against CBP and another copy of the same report of investigation located by the Office of Professional Responsibility. JA__[R.35-1 ¶ 8.f]. Three of the records about the tort claim were withheld as work product, and the remainder were released with redactions. JA__[R.35-1 ¶ 8.f].

This wide-ranging, multi-office search encompassed all locations likely to contain responsive records, JA__[R.35-1 ¶ 8.f], and amply

discharged CBP's obligation to perform a search "reasonably calculated to discover the requested documents," *SafeCard*, 926 F.2d at 1201.

## B. Sabra's Arguments Are Without Merit.

Sabra fails to identify any deficiency in CBP's search that warrants reversal. First, she argues that a single email from the Department of Homeland Security's Office of Civil Rights and Civil Liberties to CBP's Deputy Commissioner should have prompted a search of the Deputy Commissioner's email account. Appellant's Br. at 20–23. In conducting an adequate search, an agency must generally follow up on "positive indications of overlooked materials." *Montgomery v. IRS*, 40 F.4th 702, 715 (D.C. Cir. 2022) (quoting *Interralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). But an agency is obligated to pursue only those "leads" that are "both clear and certain" and "so apparent that the [agency] cannot in good faith ignore" them. *Mobley v. CIA*, 806 F.3d 568, 582 (D.C. Cir. 2015) (quoting *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 389 (D.C. Cir. 1996)); *see also Steinberg v. Dep't of Just.*, 23 F.3d 548, 552 (D.C. Cir. 1994) (agencies are not required to "follow[] an interminable trail of cross-referenced document like a chain letter winding its way through the mail"). The email to the Deputy Commissioner, on its face, is

purely informational, alerting him to the existence of Sabra's complaint shortly after she submitted it, without calling for either a response or any immediate action by the Deputy Commissioner. JA__[R.37-1 at 2]. And nothing about the proffered email indicates that the Deputy Commissioner would be involved in any way in any future investigation; instead, it informs the Deputy Commissioner that the complaint will be forwarded to the Inspector General and possibly investigated according to the agency's "usual procedures." JA__[R.37-1 at 2]. Thus, the email does not positively indicate that there are any additional responsive records in the Deputy Commissioner's email account.

Sabra also refers for the first time in this litigation to a policy requiring the Deputy Commissioner or the Commissioner to notify the Office of Civil Rights and Civil Liberties whether CBP concurs with any recommendations issued in a formal report by the Office of Civil Rights and Civil Liberties. Appellant's Br. at 21–22. But there is no indication that the Office of Civil Rights and Civil Liberties issued any such recommendations related to Sabra's encounter with CBP. Indeed, the records released to Sabra indicate that the report on investigation was issued by CBP's Office of Internal Affairs. *See, e.g.,* JA__[R.37-1 at 1].

Second, Sabra argues that CBP failed to search the Office of Internal Affairs. Appellant's Br. at 23–24. In making this argument, Sabra asks the Court to disregard the uncontested fact that the Office of Professional Responsibility, which CBP did search, is the new name of the former Office of Internal Affairs. *Id.* But CBP cited an official government website showing that the Office of Professional Responsibility is the successor of the former Office of Internal Affairs, JA__[R.39 at 4 n.4], and this Court may take judicial notice of that fact. *See Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of information on the website of the District of Columbia Retirement Board); *Hall v. Virginia*, 385 F.3d 421, 424 & n.3 (4th Cir. 2004) (taking judicial notice of information publicly available on official government website). Certainly, the district court did not abuse its discretion in crediting the accuracy of that website. *See Whiting v. AARP*, 637 F.3d 355, 364 (D.C. Cir. 2011) (reviewing district court's decision about judicial notice for abuse of discretion).

In any event, whether the Court accepts the background fact that the Office of Professional Responsibility succeeded the Office of Internal Affairs, the Howard declaration shows that CBP searched the location

reasonably likely to contain records about the investigation of Sabra's complaint by the Office of Internal Affairs. Howard avers that the Joint Integrity Case Management System searched by the Office of Professional Responsibility is the repository for claims of employee misconduct, administrative investigations, and employee discipline. JA__[R.35-1 ¶ 8.e]. Indeed, the search of that system did in fact yield the report of investigation by the Office of Internal Affairs. JA__[R.35-1 ¶ 8.e]; *see also* JA__[R.24-3 at 21]. Accordingly, CBP has demonstrated the reasonableness of its search for records about the investigation of Sabra's complaint.

Third, Sabra argues that CBP should have forwarded her request for records to the Department of Homeland Security's Office of Civil Rights and Civil Liberties and to the Office of the Inspector General, Appellant's Br. at 24–25, neither of which are part of CBP. In support of this argument, Sabra relies on a Department of Homeland Security regulation requiring components to reroute "misdirected" FOIA requests to the "proper component(s)." 6 C.F.R. § 5.4(c) (2015). But Sabra's FOIA request was clearly not misdirected to CBP. It sought records in CBP's possession related to an encounter with CBP agents and an investigation

conducted by CBP's Office of Internal Affairs. JA__[R.1 ¶¶ 74–75]; *see also* JA__[R.35-1 ¶¶ 5–6]. Nothing about the regulation cited by Sabra requires components of the Department of Homeland Security to submit duplicate requests on a requestor's behalf to other components when the requester properly directed her request to a component with responsive records.

The Department of Homeland Security's FOIA regulations were recently updated to "clarify" this. 89 Fed. Reg. 14369, 14369 (Feb. 27, 2024). Effective March 28, 2024, the regulation specifies: "A request is not a misdirected request if the receiving DHS component may maintain records responsive to any portion of the request. In other words, the receiving DHS component is not obligated to forward [the request] to other DHS components that may maintain responsive records unless those other DHS components are explicitly listed in the request." 6. C.F.R. § 5.4(c) (2023). Because CBP was the agency involved in the described incident and had responsive records, it properly did not treat Sabra's FOIA request as misdirected.

The Court should also reject Sabra's contention that CBP should have used more search terms, especially her "proper name" and "the case

number assigned to her investigation." Appellant's Br. at 26–28. On the name, Sabra insists that her name is not "Cousinsabra," which was one of the search terms used by CBP. Appellant's Br. at 27. Notably, Sabra herself listed "Cousin" as another of her names in her FOIA request, JA__[R.24-3 at 42], and her last name appears as "Cousin Sabra" in some of the records associated with her complaint, *e.g.,* JA__[R.28-2 at 6]. Thus, CBP's use of the terms "Cousinsabra" and "Cousin-Sabra," in addition to "Sabra" was informed by the records available to the agency and resulted in a more thorough search. In any event, Sabra does not dispute that the search term "Sabra," which CBP also used, JA__[R.29-1 at 8.a], is her "proper name" and would have captured records where she is mentioned by either her full name or her last name only.

Sabra next faults CBP for using terms associated with Syria. Appellant's Br. at 27–28. But, again, that only expanded the scope of CBP's search. Sabra acknowledges that the encounter that she requested records about involved her participation in a request for asylum by persons claiming to be Syrian refugees. JA__[R.1 ¶¶ 16–18]. Thus, CBP's use of those terms casts a wide net to locate records about that encounter

that might not mention Sabra by name. JA__[R.1 ¶¶ 16–18]. That is to Sabra's benefit, not her detriment.

Finally, Sabra argues that CBP should have used the case number associated with the investigation of her complaint as an additional search term. Appellant's Br. at 28. But Sabra's FOIA request did not indicate that any investigation number was an essential search term, and an agency's search is not rendered inadequate simply because it does not employ every conceivable search term associated with the requested records. *See Watkins L.*, 78 F.4th at 444–45. CBP's use of Sabra's name and the nationality of the asylum applicants with whom she was traveling amounted to an "adequate" search because those terms are reasonably likely to be associated with any records about the subject of her request: her encounter with CBP agents. *Id.* (quoting *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

## II. <u>Sabra Was Not Entitled to Judgment on the Pleadings.</u>

The district court correctly denied Sabra's motion for judgment on the pleadings because Sabra was not entitled to declaratory or injunctive relief about the timing of CBP's responses to her requests for records and expedited processing. The issue of the timeliness of CBP's responses

became moot once the agency completed its production of responsive, nonexempt records, which occurred before the district court ruled on Sabra's motion for judgment on the pleadings, JA__[R.23 at 1] (motion decided on March 2, 2021); JA__[R.19 at 1] (production complete as of November 12, 2020). *See Shapiro v. Dep't of Just.*, 40 F.4th 609, 615 (D.C. Cir. 2022) ("Now that the FBI has turned over all responsive documents, we lack authority to turn back the clock and compel the FBI to hand them over faster."); *Atkins v. Dep't of Just.*, 946 F.2d 1563 (D.C. Cir. Sept. 18, 1991) (unpublished) ("The question whether DEA complied with [FOIA] time limitations in responding to Aaron Atkins' request is moot because DEA has now responded to this request."); *Khine v. Dep't of Homeland Sec.*, 943 F.3d 959, 965 (D.C. Cir. 2019) ("[H]owever fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform with respect to the particular records that were requested." (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 490-91 (D.C. Cir. 1988) (internal quotation marks and citation omitted))).

Sabra's argument on this point is perplexing. She "accepts that a proper determination and complete production bars injunctive FOIA

relief" but nevertheless argues that the district court should have granted her motion for judgment on the pleadings. Appellant's Br. at 31–32. Perhaps this apparent contradiction is explained by Sabra's incorrect belief that her motion for judgment on the pleadings and defendant's motion for summary judgment presented the "same issues." *Id.* at 32. That is not the case. The former motion addressed only the timing of CBP's responses to Sabra's FOIA request and request for expedited processing (which was moot), while the latter addressed the sufficiency of CBP's search and whether its withholdings were justified (which was not moot). These are distinct issues, and the timing of the agency's response does not bear on the ultimate adequacy of that response. *See Tunchez v. Dep't of Just.*, No. 10-5228, 2011 WL 1113423, at *1 (D.C. Cir. Mar. 14, 2011) (agencies' failure to timely produce documents did not show that their searches or withholdings were improper and summary affirmance in favor of the agencies was appropriate). Accordingly, the timeliness issue was moot, even while the ultimate adequacy of CBP's response remained a live issue. The district court was therefore correct to deny Sabra's motion for judgment on the

pleadings and attend instead to the substantive issues presented in defendant's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

<div style="margin-left:40%">

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

BRIAN P. HUDAK
JANE M. LYONS
Assistant United States Attorneys

  /s/ Johnny Walker
JOHNNY H. WALKER
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 252-2511
johnny.walker@usdoj.gov

</div>

March 25, 2024                    *Attorneys for the United States of America*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 3,997 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it has been prepared in 14-point Century Schoolbook font, a proportionally spaced typeface.

  /s/ Johnny Walker
JOHNNY H. WALKER
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

On March 25, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, which will effectuate service upon all registered users.

<div style="text-align: right;">

/s/ Johnny Walker
JOHNNY H. WALKER
Assistant United States Attorney

</div>