## No. 23-5069

# UNITED STATES COURT OF APPEALS
# DISTRICT OF COLUMBIA CIRCUIT

————————————

**FLETA SABRA**

*Plaintiff-Appellant,*

**v.**

**U.S. CUSTOMS AND BORDER PROTECTION,**

*Defendant-Appellee.*

————————————

On Appeal for the United States District Court
for the District of Columbia, No. 1:20-cv-681 (CKK)
Before the Honorable Colleen Kollar-Kotelly

————————————

# FINAL REPLY BRIEF OF PLAINTIFF-APPELLANT
# FLETA SABRA

————————————

Andrew Fels, Esq.
Al Otro Lado
3214 Fountain Park Blvd.
Knoxville, TN 37917
865-567-4881
andrew@alotrolado.org

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT.................................................................................5

ARGUMENT.......................................................................................................6

I.    Appellee ignores CBP Directive 2130-021, its publicly acknowledged investigation policy............................................................................................6

II.   Appellee failed to carry its burden of proving an adequate search when it failed to search the emails of Deputy Commissioner MacAleenan. ...................8

III.  Appellee abandoned the justification proffered in its sworn declaration in favor of characterizing the CRCL-MacAleenan email as "purely informational," a novel explanation unsupported by precedent.......................10

IV.   Appellant's claim of additional existing records is not speculative, because agencies are assumed to follow their own policies and CBP Directive 2130-021 requires creating additional records, including Deputy Commissioner communications.................................................................................................12

V.    Appellee's sworn declarations do not attest to searching IA or all of OPR. 17

VI.   Conclusion: Appellee cannot be permitted to evade FOIA's requirements by feigning ignorance of its own policies and procedures and actively misleading the public. ...................................................................................17

CERTIFICATE OF COMPLIANCE ..............................................................19

ADDENDUM TO THE REPLY BRIEF OF PLAINTIFF-APPELLANT FLETA SABRA ...............................................................................................20

FED. R. APP. P. 28(F) ADDENDUM TABLE OF CONTENTS.......................21

CERTIFICATE OF SERVICE ........................................................................28

# TABLE OF AUTHORITIES

**Cases**

*Aguiar v. DEA*, 865 F.3d 730, 739-40 (D.C. Cir. 2017) ...........................16

*Campbell v. United States DOJ*, 164 F.3d 20, 27-28 (D.C. Cir. 1998).................16

*Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, 2021 U.S. Dist. LEXIS 44231, at *18 (D.D.C. Mar. 9, 2021) ...................................... 15, 16

*DaVita Inc. v. United States HHS*, Civil Action No. 20-1798 (BAH), 2021 U.S. Dist. LEXIS 48821, at *24-25 (D.D.C. Mar. 16, 2021) ...................................16

*Garner v. Jones,* 529 U.S. 244, 256 (2000) ...........................12

*Harvard Immigr. & Refugee Clinical Program v. United States Dep't of Homeland Sec.*, No. 21-cv-12030-DJC, 2023 U.S. Dist. LEXIS 125840, at *27 (D. Mass. July 21, 2023).........................9

*Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)......8

*Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 389, 315 (D.C. Cir. 1996)............. 10, 12

*Lamb v. Millennium Challenge Corp.*, 228 F. Supp. 3d 28, 36 (D.D.C. 2017) ...16

*Morley v. CIA*, 508 F.3d 1108, 1121 (D.C. Cir. 2007) ...........................14

*Oglesby v. United States Dep't of Army,* 920 F.2d 57, 68 (1990).........................16

*People for the Ethical Treatment of Animals, Inc. v. Bureau of Indian Affairs*, 800 F. Supp. 2d 173, 177 (D.D.C. 2011) ...........................9

*Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) ...........................10

*Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).......................8

**Statutes**

5 U.S.C § 552(a)(2)(B) ...........................4

**Other Authorities**

5 U.S.C. § 552(a)(2)(E) ...........................6

CBP Directive 2130-021 .........................4, 5, 6, 8, 10, 11

# GLOSSARY OF ABBREVIATIONS

**CBP**          Customs and Border Protection

**CRCL**       Civil Rights and Civil Liberties

**DCR**         Office of Diversity and Civil Rights

**DHS**         Department of Homeland Security

**FOIA**       Freedom of Information Act

**OIG**         Office of the Inspector General

**OPR**         Office of Professional Responsibility.

# SUMMARY OF ARGUMENT

1.      Appellee has not and cannot explain why it ignored its own publicly available civil rights investigation policy—a policy expressly describing communications with the CBP Deputy Commissioner—and did not search the emails of CBP Deputy Commissioner MacAleenan.

# ARGUMENT

"[T]he [CRCL-Deputy Commissioner] email indicates that Sabra's complaint would be investigated under the agency's 'usual procedures.'"

-Appellee's Brief, p. 7.

"CRCL will issue to DCR [CBP's Office of Diversity and Civil Rights] a draft report on CRCL's [civil rights investigation] findings . . . DCR will review and provide comments to CRCL within 15 calendar days. . . . [CBP]will obtain clearance from the CBP Commissioner or Deputy Commissioner, and shall notify CRCL of CBP's concurrence or non-concurrence."

-CBP Directive 2130-021("Roles and Responsibilities of U.S. Customs and Border Protection Component Offices and Employees Regarding Civil Rights and Civil Liberties Matters"), ¶ 8.1; 8.3.

## I.     Appellee ignores CBP Directive 2130-021, its publicly acknowledged investigation policy.

Appellee does not explain how it could fulfill its own civil rights "usual procedures" and yet also not be excused from conducting additional searches.

CBP Directive 2130-021 governs Appellee's civil rights investigations. *See* Addm005. An agency must publicly post in its online reading room all critical agency records, including policies and procedures. *See* 5 U.S.C § 552(a)(2)(B)) ("Each agency, in accordance with published rules, shall make available for public inspection in an electronic format . . . (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register.") CBP Directive 2130-021 appears on the CBP website and

governs civil rights investigations.[1] Appellee does not contest the applicability of CBP Directive 2130-021 or identify another policy superseding that directive. Hence until Appellee publishes a new policy, CBP Directive 2130-021 is presumptively how it must conduct civil rights investigations.

Yet Appellee presents a materially different account of its investigatory procedure, contradicting and disregarding CBP Directive 2130-021 to argue it had no reason to think the CBP-Deputy Commissioner had responsive records and that there is no Internal Affairs ("IA") office. These arguments are clearly at odds with CBP Directive 2130-021, which would give CBP reason to search the CBP Deputy Commissioner's emails and also discusses IA's role in civil rights investigations.

If Appellee is following its own procedure, then it created additional responsive records. Yet Appellee seems to be describing its reliance on an unpublished civil rights investigation policy, one devoid of IA and also doing away with the participation of the Deputy Commissioner. FOIA forbids relying on secret, unpublished policies. A "statement of policy . . . or instruction that affects a member of the public *may be relied on, used, or cited as precedent* by an agency against a party other than an agency only if—(i) it has been indexed and either made available or published as provided by this paragraph; or(ii) the party has

---

[1] https://www.cbp.gov/sites/default/files/assets/documents/2020-Feb/cbp-directive-2130-021.pdf

actual and timely notice of the terms thereof." 5 U.S.C. § 552(a)(2)(E) (emphasis added).

Thus, Appellee cannot ignore CBP Directive 2130-021 and, to the extent it does, it cannot rely on an unpublished policy to Appellant's detriment. Whatever unnamed investigative policy it might follow, Appellee is assumed to act in accordance with its publicly available procedures. Appellee cannot both present CBP Directive 2130-021 to the public as its binding procedure but also deny the directive's applicability or relevance.

## II. Appellee failed to carry its burden of proving an adequate search when it failed to search the emails of Deputy Commissioner MacAleenan.

In its brief, Appellee again fails to explain why it did not search Deputy Commissioner MacAleenan's emails despite uncovering a CRCL email to MacAleenan regarding the investigation into Appellant's assault complaint.

As is agreed, a FOIA search's adequacy turns on the fact-specific appropriateness of agency search methodology as reported in a sworn affidavit or declaration. *See Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). Because an agency bears the burden of proof, the "underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *People for the Ethical Treatment of Animals, Inc. v. Bureau of*

*Indian Affairs*, 800 F. Supp. 2d 173, 177 (D.D.C. 2011) (citation and internal quotation marks omitted).

Appellant broadly requested Appellee's records relating to her civil rights complaint for assault by Appellee's employees. Satisfying that request required a search of the emails of Deputy Commissioner Kevin MacAleenan. DHS Civil Rights and Civil Liberties ("CRCL") emailed MacAleenan after the assault, notifying him that it was forwarding the complaint to DHS Office of the Inspector General ("OIG") and that "[i]f [O]IG doesn't retain the investigation and [CBP's Office of Internal Affairs ("IA")] investigates, we would like to investigate jointly with IA." JA153. Even if Directive 2130-021 did not exist, that an employee receives responsive emails naturally indicates that they may have received additional emails, especially when they occupy a senior leadership position. *See Harvard Immigr. & Refugee Clinical Program v. United States Dep't of Homeland Sec.*, No. 21-cv-12030-DJC, 2023 U.S. Dist. LEXIS 125840, at *27 (D. Mass. July 21, 2023) (finding ICE's search inadequate for not searching the emails of the entities directly responsible for the programs containing the requested records).

This possibility of additional responsive records requires a search. The CRCL email to MacAleenan invited his discussion as to the impending investigation required by statute and CBP policy. The CRCL email is "a lead that is both clear and certain," and one that Appellee "cannot in good faith fail to pursue

it." *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 389, 315 (D.C. Cir. 1996). This is especially true given CBP's investigation policy.

Here, Appellee's proffered declaration makes no meaningful effort to explain why other record systems were unlikely to produce responsive records and thus did not require searching. *See* Second Supplemental Declaration of Patrick A. Howard, JA138. In fact, Appellee's declaration makes no mention at all as to CBP's investigative process, its investigative policy, IA, or any number of other locations or records specifically mentioned in CBP Directive 2130-021. *See* JA069-89 (listing Appellee's produced records).

## III. Appellee abandoned the justification proffered in its sworn declaration in favor of characterizing the CRCL-MacAleenan email as "purely informational," a novel explanation unsupported by precedent.

Appellee's brief abandons the justification for not searching MacAleenan's emails offered in its declarations in favor of a novel justification.

To carry its burden of proof, Appellee is not permitted to submit evidence in unsworn appellate briefs. Appellee's proof of search adequacy must be submitted via "reasonably detailed affidavit[s]" sworn to under penalty of perjury. *See Iturralde,* 315 F.3d at 313-14 (quoting *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)). Appellee did submit sworn declarations. It won summary judgment based on its declaration's claim " that '[b]ecause CBP has searched all files likely to contain responsive materials,

including the emails of all five CBP officials identified as potential witnesses to the encounter between Plaintiff and CBP, it was entirely reasonable for the Agency not to needlessly search the emails of all other individuals appearing on an electronic mail message which included the five CBP officials.'" Memorandum Op., JA165 (quoting Second Suppl. Howard Decl., JA142 at¶ 9).

Tacitly recognizing this argument as a *non sequitur*—the employees' emails have nothing to do with MacAleenan—the Appellee now characterizes the email as "purely informational . . . without calling for any immediate action by the Deputy Commissioner." Appellee's Brief, p. 14. This Court has not recognized a "purely informational" standard, and Appellee cites no such case. Moreover, Appellee cites no passage of any declaration advancing this "purely informational" argument. That is because no reasonable record custodian would make this claim under penalty of perjury. Under CBP policy, CRCL's email actually marks the initial step in the CBP investigatory process, a process requiring close coordination and communication between CRCL, CBP, DCR, and IA.

## IV. Appellant's claim of additional existing records is not speculative, because agencies are assumed to follow their own policies and CBP Directive 2130-021 requires creating additional records, including Deputy Commissioner communications.

Appellee claims to have conducted a civil rights investigation under its "usual procedures." Appellee's Brief, p. 7.[2] Appellee's publicly acknowledged investigation procedure would, for an adequate FOIA search, require a search for all of the numerous required communications between DCR, CRCL, IA, and the CBP Commissioner and, of course, the CBP Deputy Commissioner, who was at the time Keven MacAleenan. *See* CBP Directive 2130-021 at ¶¶ 6.1.1.6; 6.3.3; 6.6.3; 8.1;8.2; 8.3.

While FOIA does not demand an agency locate every single responsive record, "[t]his is not to say that the agency may ignore what it cannot help but know." *Kowalczyk,* 73 F.3d at 389. And an agency is of course presumed to know and act in accordance with its own policies. *See, e.g., Garner v. Jones,* 529 U.S. 244, 256 (2000) ("Absent a demonstration to the contrary, we presume [an agency] follows its statutory commands and internal policies in fulfilling its obligations"). If those duties include the creation of additional records, then the omission of those records undermines the presumption of search adequacy.

---

[2] Again, it is not clear what Appellee means by "usual procedures" because its actual actions sharply diverge from CBP Directive 2130-021, implying Appellee reliance on some undisclosed policy.

As required by statute and policy, under Appellee's "usual procedures" for civil rights investigations, CRCL first offers CBP civil rights complaints for investigation to OIG; if OIG declines, federal law requires CRCL to investigate. CBP Directive 2130-021 at ¶ 6.1.1.6 (CRCL tasked with "investigating [civil rights] complaints" unless OIG investigates); 6 U.S.C. 345(a)(6) (CRCL "shall . . . investigate complaints and information indicating possible abuses of civil rights or civil liberties, unless the Inspector General of the Department determines that any such complaint or information should be investigated by the Inspector General."). CBP's investigative policies allow CRCL to also permit IA to investigate alongside CRCL. CBP Directive 2130-021 at ¶ 6.1.1.6; ¶ 6.3.3 (describing IA duties and investigative referrals from CRCL); *see also* ¶ 6.6.3 (requiring CBP employees to cooperate "with CRCL investigators and CBP fact-finders.")

CRCL refers to this dual CRCL/IA investigation in its email to MacAleenan: "[i]f [O]IG doesn't retain the investigation and [CBP's Office of Internal Affairs ("IA")] investigates, we would like to investigate jointly with IA." JA153. OIG did not retain the investigation and IA (and presumably CRCL) investigated. Because IA (and presumably CRCL) investigated, consistent with federal law and policy, CRCL must have communicated to CBP that OIG would not be retaining the investigation. CRCL would have also later transmitted its final report to either the

Commissioner or Deputy Commissioner, thus requiring a search of both persons' emails.

"It does not suffice for purposes of summary judgment that" that an agency declaration "'may explain the lack of responsive documents; rather, the court must be able to ascertain if it *has* explained the records' absence." *Morley v. CIA*, 508 F.3d 1108, 1121 (D.C. Cir. 2007). Appellee makes no attempt to explain the absence of these records.

A. *A search of the CBP Deputy Commissioner's email was required because Appellee's own policies require CRCL to create and send an investigatory report to CBP DCR to receive approval from the CBP Commissioner or Deputy Commissioner.*
Under CBP policy, upon conclusion of its investigation, CRCL would offer a draft report to CBP's DCR for comment before CRCL would issue a final report. *Id.* at ¶ 8.1;8.2. DCR obtains clearance from the CBP "Commissioner or Deputy Commissioner" as to whether CBP will comply with CRCL's final report. *Id.* at ¶ 8.3.

Appellee attempts to brush aside the missing CRCL report, claiming that "there is no indication that the Office of Civil Rights and Civil Liberties issued any such recommendation in Sabra's case." Appellee's Brief, p. 14. Not so; CRCL's report is presumed to exist because CRCL was required to create that report and send it to CBP's Commissioner or Deputy Commissioner. CBP Directive 2130-021 at ¶ 8.3.

The presumption of agency compliance with its own policies assumes the existence of necessary agency records. That presumption defeats the presumption of search adequacy. For example, the court in *Ctr. for Biological Diversity v. Bureau of Land Mgmt.* found that an agency's statutory and regulatory duty to document policymaking decisions removed any presumption of search adequacy when the agency failed to produce those documents. *Ctr. for Biological Diversity v. Bureau of Land Mgmt.,* 2021 U.S. Dist. LEXIS 44231, at *18 (D.D.C. Mar. 9, 2021). Federal law and regulations obligated the defendant agency duty to create the records requested by the plaintiff, and the court invoked the "presumption of regularity" to assume that the agency had in fact created the required records. *Id.* at 18-19. Yet the agency had not produced these records, and thus the failure to produce these required records negated any presumption of search adequacy. *Id.* at 19. Plaintiff also pointed to the lack of meaningful communications produced by the agency, arguing that it was implausible for defendants to possess "no meaningful Secretary-level records on a Secretary-signed Secretarial Order" overturning prior agency policy. The agency response speculated that the secretary had overturned agency policy without making any meaningful communication, a possibility rejected by the court as "highly implausible and, if true, deeply troubling." *Id.* at 20. Ultimately, the combination of the missing statutorily-required records and communications, along with "notable gaps in DOI's

declarations to explain those holes in the record gave "rise to 'material doubt' about the adequacy of the agency's" search. *Id.* at 21 (quoting *Lamb v. Millennium Challenge Corp.*, 228 F. Supp. 3d 28, 36 (D.D.C. 2017)). *See DaVita Inc. v. United States HHS*, Civil Action No. 20-1798 (BAH), 2021 U.S. Dist. LEXIS 48821, at *23 (D.D.C. Mar. 16, 2021) (presuming existence of certain FOIA responsive records based on government's duty to create those records).

Appellee thus needed to explain why it did not produce or search for the records created by its investigation, including communications from CRCL and to the Deputy Commissioner. As in *Ctr. for Biological Diversity*, when responsive records are missing, the agency "bears the burden of explaining not the absence of the particular documents from the agency's records, but simply why the record system[s] that it queried . . . w[ere] the only one[s] likely to contain the requested records and why it was unlikely that there were additional files or locations that could contain the requested records." *DaVita Inc. v. United States HHS*, Civil Action No. 20-1798 (BAH), 2021 U.S. Dist. LEXIS 48821, at *24-25 (D.D.C. Mar. 16, 2021) (internal quotation marks omitted) (citing *Aguiar v. DEA*, 865 F.3d 730, 739-40 (D.C. Cir. 2017)); *see also Campbell v. United States DOJ*, 164 F.3d 20, 27-28 (D.C. Cir. 1998); *Oglesby v. United States Dep't of Army,* 920 F.2d 57, 68 (1990) (an agency is "required to explain in its affidavit that no other record system was likely to produce responsive documents."). It has not done so.

## V.  Appellee's sworn declarations do not attest to searching IA or all of OPR.

It is axiomatic that a FOIA defendant must carry its burden of proof by presenting evidence in a sworn affidavit. Appellee characterizes as "uncontested" its claim that OPR is the successor to IA. But it did not present its supposed proof that IA is equivalent to OPR in an affidavit, but in a footnote. This fact is only "uncontested" because Appellee deprived Appellant of an opportunity for response by burying that footnote in an unsworn motion for summary judgment reply brief. *See* Appellee's Brief, p. 15 (citing Def. Mot. Summ. J. Reply, JA157, n.4). Furthermore, Appellee's sworn declaration needed to explain why its search of the OPR JICMS database was equivalent to a search of IA. According to CBP Directive 2130-021, OPR has no role in civil rights investigations, nor does OPR exist. Thus, Appellee is implicitly relying on secret investigation policies and attempting to rely on those policies to Appellant's detriment. FOIA forbids this. *See* 5 U.S.C. § 552(a)(2)(E).

## VI. Conclusion: Appellee cannot be permitted to evade FOIA's requirements by feigning ignorance of its own policies and procedures and actively misleading the public.

Courts and plaintiffs rely on agencies to faithfully present and follow their policies and procedures. It is incumbent upon Appellee to faithfully report its civil rights investigation procedure to the public and the courts. Here Appellee represents its civil rights investigation process as materially different than the one

presented to the public. Appellee does not attempt to explain this distinction. Were Appellee to succeed, this Court would be accidentally blessing a Janus-faced practice antithetical to FOIA: that an agency can blithely represent one set of policies to the public and an entirely different set of policies to the courts. No matter the outcome, an agency cannot be permitted to rely on secret policy.

At minimum, the record supports remanding this case for an additional search on the grounds that the CRCL-MacAleenan email required Appellee to search MacAleenan's emails for further responsive records.

/s/ Andrew Fels
Andrew Fels, Esq.
TN BPR #036005
Al Otro Lado
3214 Fountain Park Blvd.
Knoxville, TN 37917
865-567-4881
andrew@alotrolado.org

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(e)(1), because this brief contains 3681 words in total. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

/s/ Andrew Fels

Andrew Fels, Esq.

TN BPR #036005

Al Otro Lado

3214 Fountain Park Blvd.

Knoxville, TN 37917

865-567-4881

andrew@alotrolado.org

## UNITED STATES COURT OF APPEALS
## DISTRICT OF COLUMBIA CIRCUIT

———————————

### FLETA SABRA

*Plaintiff-Appellant,*

**v.**

### U.S. CUSTOMS AND BORDER
### PROTECTION,

*Defendant-Appellee.*

———————————

On Appeal for the United States District Court
for the District of Columbia, No. 1:20-cv-681 (CKK)
Before the Honorable Colleen Kollar-Kotelly

## ADDENDUM TO THE FINAL REPLY BRIEF OF PLAINTIFF-
## APPELLANT FLETA SABRA

———————————

Andrew Fels, Esq.
Al Otro Lado
3214 Fountain Park Blvd.
Knoxville, TN 37917
865-567-4881
andrew@alotrolado.org

# FED. R. APP. P. 28(F) ADDENDUM TABLE OF CONTENTS

CBP DIRECTIVE NO. 2130-021   Addm005

# DEPARTMENT OF HOMELAND SECURITY
## U.S. Customs and Border Protection

**CBP DIRECTIVE NO.** 2130-021        **DATE:** June 3, 2011

**ORIGINATING OFFICE: OC: DCR**
**SUPERSEDES:**
**REVIEW DATE:** June 2014

**SUBJECT: Roles and Responsibilities of U.S. Customs and Border Protection Component Offices and Employees Regarding Civil Rights and Civil Liberties Matters**

**1  PURPOSE.** This directive defines the roles and responsibilities of U.S. Customs and Border Protection's (CBP) personnel with regard to civil liberties allegations filed by members of the public and individuals detained for law enforcement purposes based on interactions with CBP personnel.

**2  POLICY.** CBP shall treat all individuals in a non-discriminatory manner, with respect to all forms of protected status under federal law, regulation, Executive Order, or policy, with full respect for individual rights including equality under the law, due process, freedom of expression and religion, and freedom from excessive force, unreasonable searches and seizures, and unlawful intrusions into personal privacy. To exemplify these commitments, CBP will maintain an efficient and effective external civil rights and civil liberties complaint-processing program focused on gathering all the relevant facts and evidence necessary to resolve complaints. CBP shall adhere to the core premise that civil rights and civil liberties protection is not only an ethical and legal imperative but also a practical necessity to maintaining and enhancing the public's level of trust in federal law enforcement.

**3  AUTHORITIES.**

**3.1** Homeland Security Act of 2002 (the Act), as amended, Pub. L. No. 107-296 (November 25, 2002), codified in Title 6, U.S. Code.

**3.2** Delegation No. 3095, Delegation to the Officer for Civil Rights and Civil Liberties For Matters Involving Civil Rights, Civil Liberties, and Equal Employment Opportunity, (June 5, 2003).

**3.3** Department of Homeland Security (DHS) Management Directive System -- MD Number: 3500, Operational Roles and Responsibilities of the Officer for Civil Rights and Civil Liberties, and the Office of Chief Counsel, (May 19, 2004).

**3.4** CBP Directive No. 2130-009A, Roles and Responsibilities for U.S. Customs and Border Protection Equal Opportunity Activities and Functions, (July 27, 2010).

**3.5** Inspector General Act of 1978, as amended.

**3.6** U.S. Department of Justice, Civil Rights Division, Guidance Regarding Use of Race by Federal Law Enforcement Agencies, June 2003.

**3.7** CBP Directive No. 1440-026 – Reporting Allegations of Employee Misconduct, (April 2, 1999).

**4      SCOPE.** This directive applies to all CBP component offices and employees.

**5      DEFINITIONS.**

For the purpose of this directive, the following definitions will be used:

**5.1      Civil Rights and Civil Liberties**: The rights enumerated in the U.S. Constitution, Federal statutes, and regulations, including freedom from discrimination on the grounds of race, sex, religion, national origin, age, disability, or genetic information, freedom of speech, free exercise of religion, due process of law, appropriate conditions of confinement, and protection from excessive force, unreasonable searches and seizures, and unlawful intrusions into personal privacy.

**5.2      Racial Profiling**: As defined by the U.S. Department of Justice, the invidious use of race or ethnicity as a criterion in conducting stops, searches, and other law enforcement investigative procedures.

**6      RESPONSIBILITIES.**

**6.1      DHS Office for Civil Rights and Civil Liberties (CRCL).** CRCL supports the Department's mission to secure the nation while preserving individual liberty, fairness, and equality under the law. CRCL integrates civil rights and civil liberties into all of the Department activities by promoting respect for civil rights and civil liberties in policy creation and implementation by advising Department leadership and personnel, and state and local partners; communicating with individuals and communities whose civil rights and civil liberties may be affected by Department activities, informing them about policies and avenues of redress, and promoting appropriate attention within the Department to their experiences and concerns; investigating and resolving civil rights and civil liberties complaints filed by the public regarding Department policies or activities, or actions taken by Department personnel; and leading the Department's equal employment opportunity programs and promoting workforce diversity and merit system principles.

CRCL is responsible for the following:

**6.1.1** Pursuant to 6 U.S.C. § 345: Establishment of Officer for Civil Rights and Civil Liberties:

**6.1.1.1** reviewing and assessing information concerning abuses of civil rights, civil liberties, and profiling on the basis of race, ethnicity, or religion, by employees and officials of the Department;

**6.1.1.2** making public through the Internet, radio, television, or newspaper advertisements information on the responsibilities and functions of, and how to contact, the Officer;

**6.1.1.3** assisting the Secretary, directorates, and offices of the Department to develop, implement, and periodically review Department policies and procedures to ensure that the protection of civil rights and civil liberties is appropriately incorporated into Department programs and activities;

**6.1.1.4** overseeing compliance with constitutional, statutory, regulatory, policy, and other requirements relating to the civil rights and civil liberties of individuals affected by the programs and activities of the Department;

**6.1.1.5** coordinating with the Privacy Officer to ensure that—

    **a.** programs, policies, and procedures involving civil rights, civil liberties, and privacy considerations are addressed in an integrated and comprehensive manner; and

    **b.** Congress receives appropriate reports regarding such programs, policies, and procedures;

**6.1.1.6** investigating complaints and information indicating possible abuses of civil rights or civil liberties, unless the Inspector General of the Department determines that any such complaint or information should be investigated by the Inspector General; and

**6.1.2** Pursuant to 42 U.S.C. § 2000ee-1:

**6.1.2.1** periodically investigating and reviewing Department or component actions, policies, procedures, guidelines, and related laws and their implementation to ensure that the Department or component is adequately considering civil liberties in its actions; and

**6.1.2.2** ensuring that the Department and component have adequate procedures to receive, investigate, respond to, and redress complaints from individuals who allege such department, agency, or element has violated their civil liberties.

**6.2** **CBP's Office of Diversity and Civil Rights (DCR)**. DCR is responsible for the following:

**6.2.2** Establishing policies, implementing guidelines, standards, and programs necessary to ensure compliance with policy and guidance issued by CRCL.

**6.2.3** Advising the Commissioner and other senior CBP leaders, as appropriate, on issues that may adversely impact operations or require funding to implement.

**6.2.4**  Ensuring that CRCL receives requested information related to the implementation of guidelines, standards, and programs within the established timeframes.

**6.2.5**  Leading CBP's efforts to gather all information necessary, ensuring a free flow of information between CBP and CRCL to facilitate the timely and thorough completion of CRCL investigations. In particular, DCR will ensure that reports of investigation are returned to CRCL within 180 days.

**6.2.6**  Arranging classified briefings, when necessary, to respond to CRCL's requests for information.

**6.2.7**  Ensuring the implementation, when appropriate, of recommendations made in memoranda issued by CRCL to senior CBP leadership.

**6.2.8**  Providing notification to CRCL of actions taken or reason(s) for non-implementation of CRCL recommendations.

**6.3**    **Office of Internal Affairs (OIA), Joint Intake Center (JIC)**.  OIA is responsible for the following:

**6.3.2**  Receiving, documenting and if appropriate referring to the appropriate investigative entity all allegations concerning CBP employee misconduct, including alleged violations of civil rights, civil liberties and racial, ethnic, and/or religious profiling.

**6.3.3**  Receiving, documenting, tracking, and if necessary based on the facts presented, determining appropriate investigative/fact-finding jurisdiction on external matters involving allegations of abuses of civil rights, civil liberties and racial, ethnic, and/or religious profiling declined by the OIG and referred by CRCL to CBP for investigation or inquiry.

**6.4**    **Office of Public Affairs, CBP INFO Center**.  The CBP INFO Center is responsible for the following:

**6.4.2**  Serving as the primary point of contact for the general public to ask questions, make a comment, submit a complaint or seek clarification on CBP related regulations, requirements and processes, and practices.

**6.4.3**  Receiving, documenting, and referring to OIA alleged abuses of civil rights, civil liberties, and racial, ethnic, and/or religious profiling received from the public through a toll-free line, email, mail, or the Internet at CBP.gov.

**6.5**    **Assistant Commissioners, Chief, United States Border Patrol and Independent Office Directors**.  The Assistant Commissioners, Chief, Office of Border Patrol and Independent Office Directors, are responsible for the following:

**6.5.2**  Conveying to all CBP employees and members of the public CBP's commitment to fair and impartial law enforcement.

**6.5.3** Ensuring that all CBP employees respect the civil rights and civil liberties of all individuals.

**6.5.4** Ensuring that all civil rights and civil liberties management inquiries assigned by OIA for fact-finding are completed and submitted to OIA within the established timeframes.

**6.6** **Employees**. All CBP employees are responsible for the following:

**6.6.2** Abiding by CBP's policy to treat all individuals in a non-discriminatory manner, without regard to their protected status under federal law, regulation, Executive Order, or policy, and to respect individuals' rights to freedom of speech, free exercise of religion, due process of law, and protection from excessive force, unreasonable searches and seizures, and unlawful intrusions into personal privacy.

**6.6.3** Cooperating with CRCL investigators and CBP fact-finders during the investigative process to facilitate review and resolution of civil liberties/civil rights matters.

**6.6.4** Promptly reporting alleged employee misconduct, including abuse of civil rights/civil liberties, or racial, ethnic, or religious profiling, to:

**6.6.4.2** OIA by calling the toll-free Joint Intake Center (JIC) Hotline at 1-877-2INTAKE (1-877-256-8253), sending a fax to (202) 344-3390, or sending an email message to Joint.Intake@dhs.gov.

**6.6.4.3** Your servicing OIA Field Office (see link below for office contact information) http://cbpnet.cbp.dhs.gov/xp/cbpnet/ia/rm/ia_contacts.xml

**6.6.4.4** DHS OIG by calling 1-800-323-8603, sending an e-mail message to DHSOIGHOTLINE@dhs.gov, sending a fax to (202) 254-4292, or writing to the OIG hotline at:

> DHS Office of Inspector General/MAIL STOP 2600
> Attention: Office of Investigations - Hotline
> 245 Murray Drive, SW, Building 410
> Washington, DC 20528

**7** **REFERRALS.** DCR, CBP INFO Center, and all CBP offices shall refer all allegations of civil rights and civil liberties violations, or racial, ethnic, and/or religious profiling by DHS employees and officials to CBP's Office of Internal Affairs within a reasonable timeframe.

**8** **PROPOSED CORRECTIVE ACTIONS.**

8.1 CRCL will issue to DCR a draft report on CRCL's findings and recommendations for corrective action or appropriate enforcement actions at the conclusion of the investigation. CBP will review and provide comments to CRCL within 15 calendar days.

8.2     Upon receipt of CRCL's final report of findings and recommendations, the Executive Director, DCR, will consult with the necessary office(s) to determine if the recommendations can be fully or partially implemented.

8.3     The Executive Director, DCR, will obtain clearance from the CBP Commissioner or Deputy Commissioner, and shall notify CRCL of CBP's concurrence or non-concurrence with each recommendation, and provide an action plan for implementation of all recommendations with which it concurs, within 30 calendar days.

9     **NO PRIVATE RIGHTS CREATED.**  The procedures set forth in this directive are for CBP internal use only and create no private rights, benefits, or privileges for any private person or party.  This directive does not create a private right of appeal, claim, complaint, or other cause of action on the part of any person.

Commissioner
U.S. Customs and Border Protection

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on May 13, 2024.

       I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: May 13, 2024.

/s/ Andrew Fels
Andrew Fels, Esq.
TN BPR #036005
Al Otro Lado
3214 Fountain Park Blvd.
Knoxville, TN 37917
865-567-4881
andrew@alotrolado.org